[No. 66425-1.  En Banc.]

Argued December 8, 1998.     Decided June 24, 1999.

*In the Matter of the Personal Restraint of* LAWRENCE
BREEDLOVE, *Petitioner.*

*Lawrence Breedlove*, pro se.
*Suzanne Lee Elliott*, for petitioner.
*John W. Ladenburg, Prosecuting Attorney*, and *Barbara L. Corey-Boulet, Deputy*, for respondent.

GUY, C.J. — The issue in this personal restraint proceeding is whether a criminal defendant may, as part of a plea agreement, stipulate to the imposition of an exceptional sentence.

We answer in the affirmative and hold that a stipulation to an exceptional sentence, made as part of a valid plea agreement, may be a substantial and compelling reason that justifies the imposition of a sentence outside the standard range. Such an exceptional sentence must be one that is authorized by statute. We also hold that a trial court imposing such a sentence has an independent statutory duty to make findings of fact which show that the sentence imposed is consistent with the goals of the Sentencing Reform Act of 1981 (SRA), RCW 9.94A. Finally, we hold that a defendant who knowingly, intelligently and voluntarily agrees to the imposition of a lawful exceptional sentence waives the right to later challenge that sentence on appeal or by collateral attack.

## FACTS

On July 21, 1992, Gregory Atkins died of multiple stab

wounds. Before he died, Atkins identified his attacker as Lawrence Breedlove. Breedlove allegedly began stabbing Atkins while Atkins was asleep in bed in a Tacoma apartment. Two teenagers who were staying in the apartment were awakened by and witnessed the attack. When the two youths attempted to go for help, Breedlove threatened one of them with a knife and forced him to stay in the room with Mr. Atkins. With the knife in his hand, Breedlove chased the other teenager briefly but abandoned the chase and returned to continue his attack on Mr. Atkins.

Breedlove was charged with first degree murder. In February 1993, a jury found Breedlove guilty of the lesser included crime of murder in the second degree.

The evidence presented at the sentencing hearing showed that at the time Breedlove murdered Mr. Atkins he was serving a life sentence for murder and robbery in Oklahoma. He had escaped from confinement in Oklahoma a few weeks before Mr. Atkins was killed. The trial court sentenced Breedlove to 260 months, the high end of the standard sentencing range, and ordered the sentence be served consecutively with the Oklahoma sentence.

On appeal, the Court of Appeals reversed the conviction, holding that the trial court erred when it denied Breedlove's request to represent himself pro se. *State v. Breedlove*, 79 Wn. App. 101, 900 P.2d 586 (1995). The Court of Appeals then remanded for a new trial.

Before the second trial, the State offered to settle the criminal action. Breedlove, acting pro se but with standby counsel available, agreed. Under the terms of the settlement, Breedlove agreed to plead guilty to reduced charges of (1) first degree manslaughter for the death of Atkins; (2) unlawful imprisonment of the teenager he forced to stay during the killing of Atkins; and (3) third degree assault of the second teen who escaped when he chased her. As part of the plea agreement, Breedlove stipulated to an exceptional sentence. Breedlove's Stipulation to Exceptional Sentence provides, in pertinent part:

> 5. The defendant is willing to stipulate to an exceptional

sentence consisting of the statutory maximum sentences for each count, and that the sentences shall run consecutively, for a total sentence of twenty years.

6. The basis for the exceptional sentence is that it is part of the settlement of this case, and that the defendant, by stipulating to this sentence is thereby avoiding the substantial risk of conviction and a sentence to a greater term of confinement.

7. The defendant acknowledges that an agreement to an exceptional sentence is not one of the enumerated illustrative bases for an exceptional sentence as found in RCW 9.94A.390. However, the defendant acknowledges that under In re Barr, 102 Wn.2d 265 (1984), and State v. Hilyard, 63 Wn. App. 413 (1991), he may settle his case under certain terms and conditions, including a stipulated exceptional sentence, provided this is acceptable to the Court; even if the facts and standard sentence associated with the amended charges would not ordinarily be the same as what is being agreed to in his case.

8. The defendant is willing to enter into the stipulated sentencing agreement described herein in part because he believes and understands that a twenty year sentence would be the maximum allowable sentence under law. The State of Washington likewise acknowledges and agrees that a twenty year sentence would be the maximum allowable sentence under law for the offenses . . . .

Clerk's Papers at 53.

At the hearing on the entry of plea and sentencing, Breedlove stated that he had a two-year college degree in sociology and psychology and that he additionally had received paralegal certification from the State of Oklahoma. The sentencing court explained to Breedlove that it was the court's understanding

that you are stipulating, in other words, agreeing to that maximum sentence and that the Court has a legal basis to impose the maximum sentence, and that you won't get to turn around and challenge the basis for that exceptional sentence?

Resp't's Br. app. C at 10.

Mr. Breedlove responded:

Yes, Your Honor, the 10 year maximum, 5 year maximum, and the 5 year maximum is consecutive.

THE COURT: Which adds up to 20.

THE DEFENDANT: Yes.

Resp't's Br. app. C at 10.

The sentencing judge indicated that he had read the trial transcript of two of the witnesses, that he had read the original affidavit of probable cause in accepting the plea, and that he believed the 20-year sentence was appropriate "from what I know about the circumstances, and at this point I know a substantial amount about the circumstances." Resp't's Br. app. C at 27. The sentencing judge then followed the stipulation of the parties and, on September 5, 1996, sentenced Breedlove to the maximum sentence on each charge and ordered that the sentences be served consecutively. On the sentencing form, in place of findings of fact and conclusions of law explaining the basis for the exceptional sentence, the sentencing order states, "See stipulated agreement." Clerk's Papers at 57. No formal findings of fact and conclusions of law were entered.

Breedlove did not appeal the exceptional sentence. Instead, on September 5, 1997, he filed a personal restraint petition in the Court of Appeals, stating:

This case involves . . . a plea to an exceptional sentence without knowledge that the sentence imposed was an exceptional sentence as the sentences were imposed consecutively which exceeded the standard range without the judges [sic] advice that he would be imposing the exceptional sentence[.]

Personal Restraint Pet. at 2, *In re Breedlove*, No. 22399-6-II (Wash. Ct. App. Sept. 5, 1997).

The Chief Judge of the Court of Appeals dismissed the petition, and Breedlove filed a motion for discretionary

review. This court granted review and appointed counsel to represent Breedlove in this court.

## ISSUE

As part of a plea agreement, may a criminal defendant stipulate to the imposition of an exceptional sentence?

## DISCUSSION

In this court, Breedlove does not challenge the validity of his plea and does not seek to withdraw his plea. He does not argue that his stipulation to the exceptional sentence was made without an understanding of its terms or consequences, and he does not argue that it was involuntarily made. Instead, Breedlove argues that an exceptional sentence which is based solely on the stipulation of the parties is not statutorily authorized.

■ Imposition of a sentence which is not authorized by the SRA is a fundamental defect which may justify collateral relief.[1] *In re Personal Restraint of Fleming*, 129 Wn.2d 529, 533, 919 P.2d 66 (1996); *In re Personal Restraint of Moore*, 116 Wn.2d 30, 33, 803 P.2d 300 (1991) (a sentence imposed pursuant to a plea bargain must be statutorily authorized; a defendant cannot agree to be punished more than the Legislature has allowed for); *In re Personal Restraint of Carle*, 93 Wn.2d 31, 33, 604 P.2d 1293 (1980) (enhanced sentence for first degree robbery was not authorized under the statute).

■ The SRA authorizes the sentence imposed in this

---

[1] When a request for collateral relief is based on a constitutional challenge, the petitioner is required to show actual and substantial prejudice as a result of the alleged violation. *In re Personal Restraint of Cook*, 114 Wn.2d 802, 809, 792 P.2d 506 (1990); *In re Personal Restraint of Haverty*, 101 Wn.2d 498, 504, 681 P.2d 835 (1984). When, as in this case, the collateral relief is based on a nonconstitutional challenge, the required preliminary showing is stricter than the "actual prejudice" standard. The claimed error must constitute "a fundamental defect which inherently results in a complete miscarriage of justice." *Cook*, 114 Wn.2d at 811, 812. *See also In re Personal Restraint of Fleming*, 129 Wn.2d 529, 534, 919 P.2d 66 (1996).

case. Breedlove was sentenced to the maximum terms permitted by statute. *See* RCW 9A.20.021 (setting maximum sentences); former RCW 9A.32.060 (first degree manslaughter);[2] RCW 9A.40.040 (unlawful imprisonment); RCW 9A.36.031(1)(d) (third-degree assault). Although the maximum terms are beyond the standard sentence range, they are within the sentencing power of the trial court. Additionally, a trial court has statutory authority to impose sentences which are beyond the standard range, up to the maximum permitted, and then to order that the sentences be served consecutively. *State v. Smith*, 123 Wn.2d 51, 57-58, 864 P.2d 1371 (1993); *State v. Flake*, 76 Wn. App. 174, 182-83, 883 P.2d 341 (1994).

However, even though the sentence may be statutorily authorized, when a trial court imposes a sentence which is outside the standard range set by the Legislature, the court must find a substantial and compelling reason to justify the exceptional sentence. RCW 9.94A.120(2). *State v. Grewe*, 117 Wn.2d 211, 214, 813 P.2d 1238 (1991); *State v. Smith*, 82 Wn. App. 153, 160-61, 916 P.2d 960 (1996). If the trial court relies on a reason which is not substantial and compelling and which is not consistent with the purposes of the SRA, the sentence is unlawful. *See In re Personal Restraint of Vandervlugt*, 120 Wn.2d 427, 434, 842 P.2d 950 (1992) (vacating an exceptional sentence which was based on an unauthorized factor).

Whether a reason given by a trial court justifies an exceptional sentence is a question of law. *State v. Gaines*, 122 Wn.2d 502, 509, 859 P.2d 36 (1993); *State v. Allert*, 117 Wn.2d 156, 163, 815 P.2d 752 (1991). RCW 9.94A.390(1), (2) sets forth a list of nonexclusive and illustrative mitigating and aggravating factors that may be relied on to justify an exceptional sentence. A stipulation to the sentence as part of a plea agreement is not one of the factors listed.

---

[2]At the time Breedlove was sentenced, first degree manslaughter was classified as a class B felony. Former RCW 9A.32.060(2). The maximum sentence for a class B felony is 10 years. RCW 9A.20.021(1)(b). In 1997, the crime was reclassified as a class A felony. LAWS OF 1997, ch. 365, § 5. The maximum sentence for a class A felony is 20 years. RCW 9A.20.021(1)(a).

The question before us, then, is whether a stipulation to an exceptional sentence, made as part of a plea agreement, is a substantial and compelling reason under the SRA.

The statute does not narrowly define "substantial and compelling reason" but, instead, requires that the trial court find "considering the purpose of [the SRA], that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.120(2). The purposes of the SRA are to:

(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;

(2) Promote respect for the law by providing punishment which is just;

(3) Be commensurate with the punishment imposed on others committing similar offenses;

(4) Protect the public;

(5) Offer the offender an opportunity to improve him or herself; and

(6) Make frugal use of the state's resources.

RCW 9.94A.010.

Agreement of the parties is a reason which is frequently cited by trial courts to justify exceptional sentences, either above or below the presumptive sentencing range.[3] Although we have not had occasion to consider the issue, the

---

[3]Washington's Hard Time for Armed Crime Act requires that judicial records be kept of all sentences for certain violent or armed offenses. LAWS OF 1995, ch. 129, § 6, codified at RCW 9.94A.105. The Sentencing Guidelines Commission is charged with recording and comparing these sentences. The Commission's first report on judicial sentencing practices summarizes adult felony sentences imposed during the fiscal year 1996. The total number of adult felony sentences in this state for that period is 21,421. Of that number, 19,682, or 91.9 percent, were within the standard sentence range; 2.3 percent were above the standard range; and 5.8 percent were below the standard range (these included defendants receiving mitigated sentences as well as those sentenced under first-time offender waivers or under the special sex offender sentencing alternative). STATE OF WASH. SENTENCING GUIDELINES COMM'N, ADULT SENTENCING GUIDELINES MANUAL I-78 (1996). Agreement by the defendant to the exceptional sentence was the reason most frequently given to justify an exceptional sentence. Agreement by the parties was

Court of Appeals has twice addressed the validity of exceptional sentences imposed pursuant to agreement of the parties. In *State v. Cooper,* 63 Wn. App. 8, 816 P.2d 734 (1991), the Court of Appeals held that the defendant, by stipulating to an exceptional sentence, had either waived his right to challenge it or was barred, under the invited error doctrine, from claiming the sentence was unlawful. In *State v. Hilyard,* 63 Wn. App. 413, 819 P.2d 809 (1991), the Court of Appeals held that a stipulation to an exceptional sentence, made as part of a plea agreement, is an adequate reason for imposing an exceptional sentence. The Court of Appeals recognized the contractual nature of a plea agreement and held that the defendant, like the State, must be bound by a valid plea agreement which is accepted by the trial court. *Hilyard,* 63 Wn. App. at 420. The *Hilyard* court also held that by entering into the stipulation, the defendant had waived his right to challenge the sentence.

■ Similarly, the Supreme Court of Minnesota has recently held that a criminal defendant may, in a negotiated plea agreement, stipulate to the imposition of a sentence outside the presumptive standard range. *State v. Givens,* 544 N.W.2d 774, 777 (Minn. 1996). *See also State v. Sims,* 553 N.W.2d 58 (Minn. Ct. App. 1996). Minnesota cases on sentencing are persuasive authority in Washington. *State v. Nordby,* 106 Wn.2d 514, 521 n.5, 723 P.2d 1117 (1986) (Utter, J., dissenting) (Minnesota decisions on what factors are sufficiently "substantial and compelling" to justify an exceptional sentence provide especially persuasive authority for Washington courts); *State v. Herzog,* 69 Wn. App. 521, 526-27, 849 P.2d 1235 (1993).[4]

In *Givens,* the Minnesota court treated the stipulation on

cited as justification for sentences below the standard range in 78 of 229 cases (more than twice the number than the next frequently cited reason). SENTENCING GUIDELINES COMM'N, *supra,* at I-28 to I-29. Agreement was cited 174 times (again, more than twice the number of the next frequently cited reason—victim vulnerability at 71 times) in the 406 aggravated sentences. SENTENCING GUIDELINES COMM'N, *supra,* at I-30 to I-31.

[4]Minnesota, like Washington, requires a sentencing judge to impose a presumptive, or standard range, sentence "unless the individual case involves

sentencing as a waiver of the defendant's right to be sentenced under the sentencing guidelines and explained its holding as follows:

> Since 1980, defendants in Minnesota have benefitted from the protection of the guidelines' regulation of sentencing discretion. The guidelines exist to maintain the presence of rationality in sentencing decisions. To the extent that they restrict the discretion of the sentencing judge, the guidelines offer a measure of evenhandedness and predictability to defendants. Their purpose is to ensure that defendants will not be sentenced based upon inappropriate grounds such as race, gender or social or economic status.

> However, it has long been settled law that courts will honor a defendant's lawful, "intentional relinquishment or abandonment of a known right or privilege." Currently, we allow defendants to waive a variety of their rights, including their *Miranda* rights [*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3D 974 (1966)], their right to a jury trial, and their right to be present at trial. We see no reason not to allow a defendant to agree to a departure as part of a plea bargain with the prosecutor. Accordingly, today we hold that defendants may relinquish their right to be sentenced under the guidelines.

544 N.W.2d at 777 (citations omitted).

■ Like the Minnesota sentencing law, Washington's SRA creates a method for determining the standard range within which a particular sentence generally must fall, but also provides for the limited exercise of judicial discretion to impose a sentence outside that range. RCW 9.94A.390, .400. *See generally* DAVID BOERNER, SENTENCING IN WASHINGTON 9-1 to 9-73 (1985).

The SRA also governs plea agreements in Washington. RCW 9.94A.080-.103; *State v. Wakefield*, 130 Wn.2d 464,

---

substantial and compelling circumstances." MINN. STAT. ANN. § 244 app. at 529 (West 1992). When an exceptional sentence is imposed in Minnesota, the sentencing judge "must provide written reasons which specify the substantial and compelling nature of the circumstances, and which demonstrate why the sentence selected in the departure is more appropriate, reasonable, or equitable than the presumptive sentence." MINN. STAT. ANN. § 244 app. at 530 (West 1992).

471, 925 P.2d 183 (1996). The statute specifically authorizes agreements which recommend sentences outside the standard sentencing range. RCW 9.94A.080(3). *See also State v. Lee*, 132 Wn.2d 498, 506, 939 P.2d 1223 (1997).

■ This state recognizes a strong public interest in enforcing the terms of plea agreements which are voluntarily and intelligently made. *State v. Perkins*, 108 Wn.2d 212, 216, 737 P.2d 250 (1987). Between the parties, they are regarded and interpreted as contracts and both parties are bound by the terms of a valid plea agreement. *State v. Talley*, 134 Wn.2d 176, 182, 949 P.2d 358 (1998); *Wakefield*, 130 Wn.2d at 480 (Sanders, J., concurring in part, dissenting in part).

The trial court, however, is not bound to accept an agreement negotiated by the State and a defendant unless it first determines that the agreement "is consistent with the interests of justice and with the prosecuting standards" set forth in the SRA. RCW 9.94A.090(1). Furthermore, a trial court is not bound by any recommendation as to sentencing which is contained in a plea agreement. RCW 9.94A-.090(2). The sentencing judge must independently determine that the sentence imposed is appropriate. Where that sentence falls above or below the presumptive standard range, the reason for deviating from the presumptive range must be a "substantial and compelling" reason, in light of the purposes of the SRA.

Where the parties agree that an exceptional sentence is justified, the purposes of the SRA are generally served by accepting the agreement as a substantial and compelling reason for imposing an exceptional sentence. Those purposes often will include: ensuring that the punishment for the criminal offense is proportionate to the seriousness of the offense and the offender's criminal history; promoting respect for the law by providing punishment which is just; protecting the public; or making frugal use of the State's resources. RCW 9.94A.010(1), (2), (4), (6). In the case before us, Breedlove agreed to accept the 20-year sentence imposed by the trial court in order to avoid a

"substantial risk of conviction and a sentence to a greater term of confinement." Clerk's Papers at 53. The parties appear to have recognized the fairness of the sentence in light of the crime and Breedlove's criminal history. Furthermore, the trial court determined that the 20-year sentence was appropriate, considering the circumstances of the crime. Additionally, Breedlove was concerned about the possibility that a potential murder conviction would result in a "most serious offense" classification for purposes of the "three strikes" law. Entering into the stipulated sentence on the reduced charges alleviated this concern while providing a just punishment. Avoiding a second murder trial had the added benefit of making frugal use of State resources.

Plea agreements which are intelligently and voluntarily made, with an understanding of the consequences, are accepted, encouraged and enforced in Washington. *See Perkins*, 108 Wn.2d at 216; *Talley*, 134 Wn.2d at 183; *Lee*, 132 Wn.2d at 505-06. Through the trial judge, who has knowledge of the facts of the criminal incident and of the negotiating parties, the law provides protection to the defendant and to the public to ensure that a plea agreement is consistent with the interests of justice, RCW 9.94A.090, and the goals of the SRA.

We hold that where, as here, a trial court has approved a plea agreement as being consistent with the interests of justice and in conformance with this state's prosecuting standards, the trial court may additionally approve the plea agreement's stipulation to an exceptional sentence above or below the standard range if the trial court finds that the sentence is consistent with the purposes of the SRA.

The fact that a stipulation may be a substantial and compelling reason justifying an exceptional sentence does not relieve the sentencing court of its duty to enter findings of fact and conclusions of law which explain the reasons for the sentence.

RCW 9.94A.120(3) provides in pertinent part:

Whenever a sentence outside the standard range is imposed,

the court shall set forth the reasons for its decision in written findings of fact and conclusions of law.

Written findings ensure that the reasons for exceptional sentences are articulated, thus informing the defendant, appellate courts, the Sentencing Guidelines Commission, and the public of the reasons for deviating from the standard range. RCW 9.94A.105. *See* BOERNER, *supra*, at 9-2 to 9-5.

■■ The remedy for a trial court's failure to issue findings of fact and conclusions of law is ordinarily remand for entry of the findings, and we remand here for that purpose. *State v. Head*, 136 Wn.2d 619, 624, 964 P.2d 1187 (1998); *Templeton v. Hurtado*, 92 Wn. App. 847, 965 P.2d 1131 (1998). The failure to enter findings does not justify vacation of the sentence in a personal restraint proceeding unless it is a fundamental defect which results in a complete miscarriage of justice. *See In re Personal Restraint of Cook*, 114 Wn.2d 802, 812, 792 P.2d 506 (1990). There is no miscarriage of justice where the sentence imposed is the precise sentence requested by the defendant.

■ Further, by knowingly, intelligently and voluntarily agreeing to the exceptional sentence and by signing the sentencing order, Breedlove waived his right to appellate review of the exceptional sentence. *Perkins*, 108 Wn.2d 212 (a criminal defendant may, as part of plea agreement, waive constitutional and statutory rights, including rights under the SRA and the right to appeal); *State v. Mollichi*, 132 Wn.2d 80, 89 n.4, 936 P.2d 408 (1997) (criminal defendants may, expressly or impliedly, waive constitutional rights to counsel, to speedy public trial, to jury trial, to be free from self-incrimination, or to be tried in the county where the crime was committed, and may waive statutory rights, such as the right to have restitution determined within the statutory time limit); *Cooper*, 63 Wn. App. at 13-14.

The testimony and evidence before the sentencing judge was that Breedlove had completed two years of college. He also is a certified paralegal and has represented himself in

civil cases in federal court. He understood the charges against him, the standard sentence range and the maximum sentence. His responses to the court's questions demonstrate he understood that the consequences of his plea agreement included the imposition of a maximum sentence on each charge and that the maximum sentences would run consecutively for a total of 20 years. It also appears that Breedlove understood the alternative to the plea agreement was retrial on the murder charge. He indicated that he understood the possibility that he would be convicted a second time on that charge and that his sentence was likely to be longer than 20 years. He also was concerned that a conviction for murder (but not manslaughter) would constitute a conviction for a "most serious offense" under RCW 9.94A.030(23) and he was concerned that such a conviction would be a strike under Washington's "three strikes" law. He also indicated to the sentencing judge that he understood and agreed that he would not be able to challenge the basis for the imposition of the exceptional sentence.

His stipulation to the sentence was intelligent, voluntary and made with an understanding of its consequences and constitutes a valid waiver of his right to challenge, by appeal or personal restraint petition, the sentence he requested.

We additionally note that the doctrine of invited error " 'prohibits a party from setting up an error at trial and then complaining of it on appeal.' " *Wakefield*, 130 Wn.2d at 475 (quoting *State v. Pam*, 101 Wn.2d 507, 511, 680 P.2d 762 (1984)), *overruled on other grounds by State v. Olson*, 126 Wn.2d 315, 893 P.2d 629 (1995). The doctrine has been considered in cases in which defendants were sentenced pursuant to plea bargains and later challenged their sentences on appeal. *Wakefield*, 130 Wn.2d at 475 (the doctrine did not apply where a trial judge went beyond the defendant's request that the court participate in plea negotiations); *Cooper*, 63 Wn. App. at 14 (defendant's statement on plea of guilty that he agreed sentences should be

served consecutively was invited error). *See also Smith*, 82 Wn. App. at 162-63 (defendant could not challenge trial court's finding of deliberate cruelty where defense counsel had conceded deliberate cruelty existed).

In this case Breedlove agreed to the imposition of a particular sentence in exchange for reduced charges and a presumably shorter sentence. He agreed, in writing and orally in open court, that the stipulation, itself, justified the exceptional sentence in his case. He signed the sentencing order, which contained the abbreviated reason for the exceptional sentence, rather than findings of fact.

He invited any error in the trial court's failure to make specific findings on the sentence and may not now complain that the failure was error.

■■■ Breedlove additionally argues in his opening brief in this court that the trial court should have been collaterally estopped from imposing an exceptional sentence on remand for a new trial. This issue was not raised at the time of sentencing, in the personal restraint petition or the motion for discretionary review, and it was not accepted for review. We decline to consider it but note that the cases cited by Breedlove on this issue do not support his position.

Affirmed; the personal restraint petition is dismissed. However, we remand to the sentencing court for the entry of findings of fact and conclusions of law supporting the exceptional sentence.

SMITH, JOHNSON, and MADSEN, JJ., and DOLLIVER, J. Pro Tem., concur.

ALEXANDER, J. (concurring) — I agree with the dissent that a stipulation to an exceptional sentence is not a substantial and compelling reason justifying imposition of a sentence outside the standard range. While the State and a defendant may certainly stipulate to facts that may support the finding of a reason for an exceptional sentence, the parties cannot by their stipulation bind the sentencing judge to make such a finding.

I nevertheless agree with the majority that we should affirm the sentence imposed here on Breedlove. I reach this conclusion because Breedlove waived his right to appellate review of the sentence by requesting the sentence that was imposed. As the majority notes, the record clearly establishes that Breedlove acted intelligently, voluntarily, and knowingly when he agreed to have the sentencing court sentence him to a term of 20 years. For that reason, he may not now be heard to quarrel with the sentencing court's embracing of a result he invited.

DURHAM and TALMADGE, JJ., concur with ALEXANDER, J.

SANDERS, J. (dissenting) — Breedlove's exceptional sentence was based on a single "finding" of the trial court: "See stipulated agreement." Clerk's Papers (CP) at 57. Breedlove's stipulation states that he is stipulating to the sentence to avoid substantial risk of conviction and sentence to a greater term of confinement. CP at 53 (Def.'s Stipulation to Exceptional Sentence (Sept. 5, 1996) at 2, ¶ 6). The issue is therefore whether this finding and stipulation are sufficient to comply with the Sentencing Reform Act of 1981 (SRA) which requires a substantial and compelling reason to exceed the sentencing range the Legislature has determined to be the presumptive standard.

A plea bargain to a sentence not in compliance with the law will not be enforced. *In re Personal Restraint of Moore*, 116 Wn.2d 30, 38, 803 P.2d 300 (1991) (sentence imposed pursuant to plea bargain must be statutorily authorized; defendant cannot agree to be punished more than the legislature has allowed); *State v. Miller*, 110 Wn.2d 528, 538, 756 P.2d 122 (1988) (Durham, J., concurring in result) ("There simply is no credible legal argument that can be made for the proposition that a court [ ] may exceed its statutory sentencing authority in order to enforce the terms of a plea agreement.") (citation omitted); *In re Personal Restraint of Gardner*, 94 Wn.2d 504, 507, 617 P.2d 1001 (1980) (plea agreement cannot exceed statutory authority

given to court). The fact that the defendant had two years of college and paralegal training (Majority at 302) does not change the statutory sentencing requirement.[5]

The SRA sets out the standard sentencing range. It prohibits a sentence outside that range except where the trial court "finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.120(2).

In most cases the SRA contemplates imposition of the standard range sentence, as that range is "a legislative determination of the applicable punishment range for the crime as ordinarily committed." *State v. Parker*, 132 Wn.2d 182, 186-87, 937 P.2d 575 (1997).

Clearly, if the judge imposed an exceptional sentence solely on the basis of this plea agreement, it would be invalid. *In re Personal Restraint of Moore*, 116 Wn.2d at 38. This being the case, it must follow "substantial and compelling reasons" justifying imposition of an exceptional sentence cannot include the plea agreement itself. The reasoning of the majority is therefore circular when it holds "[w]here the parties agree that an exceptional sentence is justified, the purposes of the SRA are generally served by accepting the agreement as a substantial and compelling reason for imposing an exceptional sentence." Majority at 309.

The majority speculates as to other reasons that may have been in the minds of the parties or the court at the time that this plea agreement was made. Majority at 310 ("The parties *appear* to have recognized the fairness of the sentence in light of the crime and Breedlove's criminal history. Furthermore, the trial court determined that the 20-

---

[5]The majority notes that Breedlove proceeded pro se "but with standby counsel available." Majority at 301. At the session where the court accepted Breedlove's stipulation to the exceptional sentence, Breedlove was in custody and his standby counsel was not present. State's Resp. to Personal Restraint Pet. app. C at 2 (Pierce County No. 92-1-03059-6, Report of Proceedings (Sept. 5, 1996)). As the record shows, the only legal advice Breedlove received in preparing his plea came from the prosecuting attorney. *Id.* at 3. At one point, albeit not with regard to the stipulation, Breedlove even mentioned he was acting "on advice of Counsel," referring to the prosecutor. *Id.* at 27.

year sentence was appropriate, considering the circumstances of the crime.") (emphasis added). However, the actual findings of the trial court provide no basis for the exceptional sentence other than the stipulation, which is as inadequate to meet the statutory standard as is the plea agreement of which it is a part. As a matter of preestablished law, a stipulation to an exceptional sentence cannot be a compelling and substantial reason justifying the exceptional sentence.

The majority notes the prosecutor's right under the SRA to recommend a sentence outside the guideline. Majority at 309 (citing RCW 9.94A.080(3); *State v. Lee*, 132 Wn.2d 498, 506, 939 P.2d 1223 (1997)).[6] However, this simply reflects a right of the prosecutor, not an obligation of the court.

The majority relies upon three cases to support its holding, none from this court, and, in the end, none satisfying.

*State v. Cooper*, 63 Wn. App. 8, 13, 816 P.2d 734 (1991): Unlike the case at bar, the trial judge entered specific conclusions of law supporting his decision to impose an exceptional sentence. Thus *Cooper* is inapposite.

*State v. Hilyard*, 63 Wn. App. 413, 417, 819 P.2d 809 (1991): The trial court entered a written conclusion " 'that an exceptional sentence is justified on *the facts* and also due to the stipulation of parties in plea negotiations per RCW 9.94A.080,' " (quoting trial court's conclusions of law) (emphasis added). Affirming, the Court of Appeals simply quotes the statutory language of RCW 9.94A.080(3)

---

[6]The statute states,

> The prosecutor and the attorney for the defendant, or the defendant when acting pro se, may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea to a charged offense or to a lesser or related offense, the prosecutor will do any of the following
>
> . . . .
>
> (3) *Recommend* a particular sentence outside of the sentence range.

RCW 9.94A.080 (emphasis added).

In *Lee* we said, "Agreements to *forgo seeking* an exceptional sentence, to decline prosecuting all offenses, to pay restitution on uncharged crimes, and to waive the right to appeal are all permissible components of valid plea agreements." *State v. Lee*, 132 Wn.2d 498, 506, 939 P.2d 1223 (1997) (emphasis added).

that an exceptional sentence may be part of the plea agreement. *Hilyard*, 63 Wn. App. at 418. Unconsidered is the legal question before this court: Is a stipulation by itself a substantial and compelling reason to go beyond the SRA?

Finally, the majority relies on *State v. Givens*, 544 N.W.2d 774 (Minn. 1996). There the Minnesota court noted that the exceptional sentence could be affirmed on the grounds that the victim was particularly vulnerable due to age, a specific factor authorizing an exceptional sentence under the Minnesota statute, and a finding made by the Minnesota trial court judge. *Givens*, 544 N.W.2d at 775-76. The court did however opine a criminal defendant could make a knowing, intelligent, and voluntary waiver of his statutory sentencing rights. *Id.* at 777. But in our state it is settled that even a knowing, intelligent, and voluntary waiver of a defendant's statutory sentencing rights will not authorize the sentencing court to depart from the statute. *In re Personal Restraint of Moore*, 116 Wn.2d at 38; *In re Personal Restraint of Gardner*, 94 Wn.2d at 507.

As our majority concludes a stipulation equates to a substantial and compelling reason for imposing an exceptional sentence, Majority at 309, it is interesting to note the Minnesota court held "an attempt 'by the parties to limit sentence duration does not create a "substantial and compelling circumstance" which may be relied upon as justifying a departure from the Guidelines.' " *Givens*, 544 N.W.2d at 777 (quoting *State v. Garcia*, 302 N.W.2d 643, 647 (Minn. 1991), *overruled on other grounds by Givens*, 544 N.W.2d at 777 n.4).[7]

The majority fails to credit the distinction between the rights of the parties to a plea agreement to contract as they see fit and the obligations placed by statute upon the trial

---

[7]The *Givens'* court writes, "To the extent that *State v. Garcia*, 302 N.W.2d 643 (Minn. 1981), is inconsistent, it is overruled." *State v. Givens*, 544 N.W.2d 774, 777 n.4. But it is clear that the *Givens'* court specifically held that the question before it *was not* whether a plea agreement could be a substantial and compelling reason to depart from sentencing guidelines, and therefore that conclusion in *Garcia* was not overruled. *Id.* at 777. *See State v. Butterfield*, 555 N.W.2d 526, 533 (Minn. 1996) (noting that *Garcia* was overturned on question of waiver).

court to impose a sentence which conforms to legal standards. Here the trial court set a sentence outside the statutory guidelines based solely on the plea agreement. The SRA's requirement that a judge set a sentence outside its guidelines only for substantial and compelling reasons is not satisfied by a plea agreement. Rather, such a sentence may be imposed only upon a finding of the trial court judge that such reasons do exist and the exceptional sentence is imposed based on criteria set forth in the SRA.[8]

The remedy is not new findings to justify an erroneous result, but lawful imposition of sentence based upon the findings actually made.

---

[8]The majority recognizes this failing, and remands for an entry of findings. Majority at 311. But it opines, "There is no miscarriage of justice where the sentence imposed is the precise sentence requested by the defendant." Majority at 311. This is nothing more than a one sentence summation of the majority's entire premise, that a defendant's stipulation to an exceptional sentence is itself a compelling and substantial reason to impose an exceptional sentence.