
# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
                                 )
            Respondent, )
                                 )
    v. )
                                 )
FREDERICK E. HARDTKE, )
                                 )
            Appellant. )
_____ )

No. 70002-2-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: July 21, 2014

SPEARMAN, C.J. — Frederick Hardtke challenges a condition of pretrial release and condition of sentence requiring him to reimburse San Juan County (County) for the cost of pretrial monitoring via a Transdermal Alcohol Detection (TAD) ankle bracelet. Because defendants are solely responsible for bearing the cost of conditions of pretrial release, and Hardtke expressly agreed to reimburse the County for the costs of TAD monitoring in his valid plea agreement, we affirm.

## FACTS

On June 28, 2012, Frederick Hardtke was arraigned and pled not guilty to two counts of second degree rape, one count of second degree assault, four counts of fourth degree assault, and malicious mischief, all involving domestic violence. The trial court found that a substantial danger existed that Hardtke would commit a violent crime if released and, pursuant to CrR 3.2(d), the court imposed conditions of release. The court required Hardtke not to possess or

consume alcohol, to have no contact with the alleged victim, and to abide by the terms of a domestic violence no contact order. The court also ordered Hardtke to post a $15,000 bond or cash to guarantee those conditions. However, the trial court agreed to reconsider the bond condition if it could be shown that no bonding company would write a bond for the required amount.

On July 11, 2012, the trial court heard Hardtke's motion to modify his conditions of release. Hardtke had been unable to secure a $15,000 bond from any agency and remained in custody. Noting that the court's main concern was his behavior when intoxicated, Hardtke suggested that, in lieu of the $15,000 bond, the court should require him to submit to monitoring via a TAD ankle bracelet, which could measure his blood-alcohol level at all times. In response, the State submitted that, if TAD monitoring were ordered, Hardtke should bear the costs.

The trial court reduced the bond to $3,000 but maintained all other conditions. The court also ordered Hardtke to appear in court on July 20, 2012, at which time he was to have posted a performance bond in the amount of $15,000, or, in the alternative, post a $3,000 bond and submit to TAD monitoring at his own expense. The court agreed to revisit the issue of requiring Hardtke to pay the cost of TAD monitoring at the July 20 hearing.

No. 70002-2-I/3

At the July 20, 2012 hearing, Hardtke advised the court that arrangements had been made for TAD monitoring to begin at 1:00 p.m., but contended that he should not be required to pay the cost of the monitoring. He argued:

> [T]hat the Court had decided that the $3000 performance bond, the TAD device, and the other release conditions, as a set, addressed adequately the concern that Defendant will commit a violent crime. Therefore, under CrR 3.2, the Court could not impose a higher performance bond. This is true whether or not Defendant payed (sic) the cost of the TAD device. Therefore, the Court could not impose the cost of the TAD device on Defendant under the threat of imposing a higher performance bond.

Agreed Report of Proceedings (ARP) at 5.

The trial court apparently adhered to its earlier decision, requiring as conditions of release that Hardtke either post a $15,000 performance bond and abide by certain conditions or, in the alternative, post a $3,000 bond, abide by certain conditions, and submit to TAD monitoring at his own expense. Notably, although the agreed record of proceedings reports the trial court's ruling on this issue, the rationale for the court's conclusion, if given at the hearing, is absent. It appears that Hardtke chose the latter option and was released from custody.

On August 9, 2012, the State moved to revoke release and forfeit Hardtke's $3,000 bond. The TAD device had shown that Hardtke had consumed alcohol on at least three occasions between August 4 and August 8, 2012. When Hardtke was subsequently taken into custody, breath testing showed blood alcohol concentration of over 0.05. Hardtke admitted the violations. The court revoked release and forfeited the $3,000 bond. It also entered a new order of

3

release, which maintained the conditions set forth in the July 20, 2012 order, but with the bond amount increased to $10,000. It appears that Hardtke posted the increased amount and remained free on bond.

Prior to trial, Hardtke reached a plea agreement with the State, under which the State reduced the charges against Hardtke to one count of rape in the third degree and one count of assault in the second degree. The parties also agreed upon a sentencing recommendation which included, among other things, an exceptional sentence of 24 months incarceration on each count and that Hardtke would "[r]eimburse San Juan County for the cost of transdermal monitoring." Clerk Papers (CP) at 73.

Hardtke was sentenced on February 15, 2013. Despite his agreement to reimburse the County for the cost of TAD monitoring, Hardtke repeated his argument from July 20 that he could not be legally required to pay it. The court imposed the agreed upon sentence and conditions. Hardtke appeals only the trial court's assessment of $3,972 in costs associated with TAD monitoring.

## DISCUSSION

There is a strong public interest in enforcing terms of plea agreements that are voluntarily and intelligently made. In re Personal Restraint Petition of Breedlove, 138 Wn. 2d 298, 309, 979 P.2d 417 (1999). Both parties are bound by the terms of a valid plea agreement and, between the parties, they are regarded and interpreted as contracts. Id. Entering a valid plea agreement

4

waives a defendant's right to challenge the sentence he requested pursuant to the agreement. Id. But, a defendant cannot agree to a sentence in excess of that authorized by statute and, thus, cannot waive a challenge to such a sentence. In re Personal Restraint Petition of Goodwin, 146 Wn.2d 861, 873, 50 P.3d 618 (2002).

Hardtke argues that because, in his view, the trial court lacked authority to order him to pay the cost of TAD monitoring, it also could not impose as a condition of his sentence that he reimburse the County for that cost. The argument is without merit. Hardtke fails to identify any provision in CrR 3.2 that prohibits a court from requiring a defendant on pretrial release to assume the costs associated with conditions of release, and his argument that we should interpret the rule to find such a prohibition is unpersuasive.

Resolution of this case requires interpretation of a court rule, which is subject to de novo review. State v. McEnroe, 174 Wn.2d 795, 800, 279 P.3d 861 (2012). We interpret court rules using the rules of statutory construction. Id. The terms used in court rules should be given their plain and common meaning. State v. Johnson, 21 Wn. App. 919, 921, 587 P.2d 189 (1978); see also State v. Ollivier, 178 Wn.2d 813, 852, 312 P.3d 1 (2013). Rules are construed so as to effectuate the drafters' intent, avoiding readings that result in absurd or strained consequences. McEnroe, 174 Wn.2d at 795.

5

CrR 3.2(d) sets forth several conditions of pretrial release that a trial court may impose if it finds a substantial danger that the defendant will commit a violent crime, intimidate witnesses, or otherwise unlawfully interfere with the administration of justice while awaiting trial. Subsection (d)(9) and (d)(10) permit the court to "[r]equire the accused to return to custody during specified hours or to be placed on electronic monitoring, if available," and to "[i]mpose any condition other than detention to assure noninterference with the administration of justice and reduce danger to others in the community," respectively. Hardtke does not dispute the trial court's finding that he presented such a danger and, since he proposed TAD monitoring as a condition of release, he concedes it was an appropriate condition to mitigate the danger. He contends, however, that the court rules do not provide authority for the trial court's order that he bear the cost of this condition.

Hardtke first argues, without citation to authority, that because CrR 3.2(d) does not expressly provide that trial courts may require defendants to bear the cost of TAD monitoring, they lack authority to do so.[1] The argument is without merit. A number of the conditions of release authorized by CrR 3.2(d) have costs associated with them, but under Hardtke's line of reasoning, a defendant cannot be required to bear the cost of utilizing them. This is an absurd result. For

---

[1] Hardtke notes that with one exception, no statute or court rule gives courts blanket authority to impose the cost of pretrial release conditions on a defendant. RCW 10.01.160(2) provides that costs for administering a pretrial supervision program may not exceed one hundred fifty dollars.

6

example, under CrR 3.2(d)(6), a trial court may require as a condition of release, as it did in this case, that the defendant post a secured bond. The bonding company will typically require a fee of ten to twenty percent of the amount of the bond. Under Hardtke's interpretation of the rule, courts must either require the bonding company to provide this service to the defendant at no cost, or they are limited to imposing an unsecured bond requirement or requiring cash in lieu thereof. Neither result is a sensible interpretation of the rule. Similarly, pursuant to CrR 3.2(d)(1) and (2), a trial court could require, as it did in this case, that the defendant have no contact with the victim. Here, compliance with the court's no contact condition required Hardtke to vacate the residence he shared with the victim and their child. No doubt costs were associated with abiding by this condition of release. Under Hardtke's interpretation of the rule, instead of requiring the defendant to bear these costs, the anomalous result would be to impose them on some other individual or entity.

As with other conditions of pretrial release, if a defendant chooses to avail himself of TAD monitoring in order to be released from confinement, the cost of doing so is fairly his to bear. The court rules, reasonably read, do not prohibit this result.[2]

---

[2] Hardtke observes that under RCW 10.010.160(1) costs may not be imposed on a defendant except upon conviction, but there was no violation of this statute. Although Hardtke spent nearly seven months on TAD monitoring, it does not appear that he was required to pay for the service until after he was sentenced.

No. 70002-2-I/8

In this case, it was within the trial court's authority to order TAD monitoring as a condition of release and to require Hardtke to pay to the cost thereof. Accordingly, his agreement to reimburse the County for this expense as a condition of his sentence was lawful and properly imposed by the court. In re Breedlove, 138 Wn.2d at 312.

Affirm.

WE CONCUR:

8