# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE STATE OF WASHINGTON,

Appellant,

v.

BRAD H.L.B. GEORGE,

Respondent.

No. 83815-6-I

DIVISION ONE

UNPUBLISHED OPINION

BIRK, J. — In 2015, Brad George pleaded guilty to committing first degree murder at the age of 16, and the superior court imposed the sentence he and the State had agreed to support. In 2021, George filed a motion for relief from judgment under CrR 7.8 seeking resentencing, arguing the sentencing court had unconstitutionally failed to consider George's youth as a factor mitigating his culpability for the crime and the court's associated discretion. The superior court granted George's motion, concluding from the circumstances of George's crime, plea, and sentencing that if the appropriate constitutional standards had been observed, he likely would have been sentenced to a shorter term. We affirm.

I

On the night of February 6-7, 2014, George killed his guardian, Georgina Latshaw. George was 16 years old at the time. After originally denying involvement, on February 9, 2014 George confessed to Everett police. George was initially charged with first degree murder, with a deadly weapon. The standard

sentencing range was 264 to 344 months. As part of plea negotiations, the State dismissed the deadly weapon enhancement, reducing the standard range by 24 months, to 240-320. In April 2015, George pleaded guilty to first degree murder.

On April 9, 2015, at sentencing, the prosecutor stated George had been examined by a forensic psychologist. The defense obtained a report that was reviewed by the prosecutor and "experts in the field of dealing with folks of Mr. George's nature," but that the defense elected "not to put into a public file." The prosecutor acknowledged George has "some serious impairments. He has been in special schooling for most of his life. He has had behavioral issues for a large part of his life." The prosecutor stated, "[W]e were able at an early stage to obtain a great deal of information about his schooling, about his past psychological records. They fill in excess of three, three-ring binders in my office." The prosecutor also stated George "was the victim of pretty substantial childhood trauma. Bad things happened to him early on. . . . [C]learly there is some linkage between what happened to him at an early age and his behaviors." The prosecutor acknowledged, "People at 17 aren't people at 30. The juvenile brain is different. People develop differently. And in the last couple of years, our Supreme Court, or the United States Supreme Court and our court ha[ve] modified the rules, such that you have to treat kids of this age differently than adults. You can't [sentence to] life without parole because of the recognition of how the brain develops." The prosecutor stated, "[T]he brain changes, people change, antisocial personality disorder is known to regress and recede."

The defense echoed the State, saying George suffered from mental illness his entire life and it played a role in what he did to Latshaw.  CP 100.  The defense expressed hope that George's mental illness is not static or permanent and "that there is a period of physical growth, there is a period of therapy and treatment available that can change the course of Brad's life."  While not explicitly mentioning George's youth, the defense stated, "All of the experts who have been consulted in this case believe that this time period is really critical mentally and growth wise."  The two-page defense sentencing memorandum stated George's "mental illness and youth serve only as mitigating factors within the standard range. . . .  His history documents a child who suffered from mental illness as early as age two and was seeing mental health professionals as early as 2003.  He was clearly neglected as an infant and young child and that contributed to his various diagnoses as he grew up."

The trial court reviewed letters received from Barbara Nicholson, Crystal Winchester, and Sonja Springstead.  Nicholson, George's paternal grandmother, wrote, "[George's] mental state at the time was the determining factor of what took place."  Winchester, George's biological mother, wrote, "[P]lease know that sentencing Brad to 28 years is NOT enough time.  [George] is mentally ill and needs lots of help."  Springstead, Latshaw's sister and George's aunt, wrote, "Please, PLEASE, for all of society, sentence him as harshly as possible."  And she said, "It is justice for him to be imprisoned forever.  It would be a great injustice, and [he would be] a danger to himself and others, if he were ever to be set free."

The sentencing court acknowledged "efforts were focused on negotiating a plea agreement which, frankly, the defense was successful at in the sense that they agreed to all the information [the prosecutor] mentioned to eliminate the deadly weapon allegation." After addressing concerns from family members, the court stated, "[T]his Court would not have the option at all with this charge and with these facts of sentencing to life without parole. . . . [T]he Court still has to consider and operate within what the standard range is, and the standard range is between 240 and 320 months." The court acknowledged George's age, saying, "[B]ecause he's only 17 years old, there are protections that the United States Supreme Court and the legislature have built into the system that wouldn't allow this Court to put him away forever anyway." The court commented, "[N]ot only has Mr. George not yet achieved adulthood, but he's had a pretty rocky juvenile life." The court listed as mitigating factors George's age, mental illness, and guilty plea. The court imposed the jointly proposed sentence of 288 months.

On November 2, 2021, George filed a motion seeking resentencing under CrR 7.8(b)(4) and (5). George relied on a one page declaration by his lawyer, a transcript of the sentencing hearing, the original defense sentencing memorandum, and a new report of "provisional findings" by Mark Cunningham, PhD, dated October 17, 2021, opining that George's youthfulness played a role in his culpability for the crime when it was committed. The State filed a motion to transfer the matter to the Court of Appeals. On March 8, 2022, the superior court granted George's motion and denied the State's motion. The superior court concluded that if the sentencing court had considered that the mitigating factors of

4

youth allowed the court to deviate from the standard range, George likely would have received a lower sentence.  The State timely appeals.  RAP 2.2(b)(3).

II

A

State v. Houston-Sconiers, 188 Wn.2d 1, 20-21, 391 P.3d 409 (2017), held that under the Eighth Amendment to the U.S. Constitution, "sentencing courts must have complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant, even in the adult criminal justice system."  As a result, "[t]rial courts must consider mitigating qualities of youth at sentencing and must have discretion to impose any sentence below the otherwise applicable SRA range and/or sentence enhancements."  Id. (citing Sentencing Reform Act of 1981, ch. 9.94A RCW).  Houston-Sconiers "announced a new substantive constitutional rule that must be applied retroactively upon collateral review."  In re Pers. Restraint of Ali, 196 Wn.2d 220, 236, 474 P.3d 507 (2020).  Retroactivity is limited in that "the rule announced by Houston-Sconiers that applies retroactively . . . is the substantive rule that courts may not impose 'certain adult sentences . . . on juveniles who possess such diminished culpability that the adult standard SRA ranges and enhancements would be disproportionate punishment.' "  In re Pers. Restraint of Hinton, ___ Wn.3d ___, 525 P.3d 156, 162 (2023) (one alteration in original) (quoting Ali, 196 Wn.2d at 239).  The "dual mandate" of Houston-Sconiers—that sentencing courts consider mitigating qualities of youth and appreciate their discretion to depart from the standard ranges—is a "procedural rule."  In re Pers. Restraint of Carrasco, 1 Wn.3d 224, 237, 525 P.3d 196 (2023).

"A violation of that procedural right does not lead to the conclusion that [a defendant] is serving an unconstitutional sentence under the Eighth Amendment." Id.

In the context of collateral review, when a violation of the procedural mandates of Houston-Sconiers occurred at sentencing, the "ultimate question" is whether the violation "constituted a violation of the Eighth Amendment's substantive rule prohibiting punishment disproportionate to culpability." In re Pers. Restraint of Forcha-Williams, 200 Wn.2d 581, 599, 520 P.3d 939 (2022). This standard requires a personal restraint petitioner to "show by a preponderance of the evidence that [their] sentence would have been shorter if the sentencing judge complied with Houston-Sconiers." Id. This followed from In re Personal Restraint of Meippen, 193 Wn.2d 310, 316, 440 P.3d 978 (2019), which concluded collateral relief was unavailable to a defendant who did "not show by a preponderance of the evidence that [their] sentence would have been shorter." This reflects the general rule that a defendant asserting a constitutional error must show they were "actually and substantially prejudiced" to obtain collateral relief. Forcha-Williams, 200 Wn.2d at 601 (citing Ali, 196 Wn.2d at 242-43); see also Meippen, 193 Wn.2d at 316.

George's collateral attack under CrR 7.8 is subject to the same standards. Cf. State v. Hubbard, ___ Wn.3d ___, 537 P.3d 1152, 1159 (2023) (collateral attacks filed in the superior court are governed by CrR 7.8 and subject to the same time constraints as collateral attacks filed in appellate courts). George was required to make "a substantial showing" that he was entitled to relief under CrR

6

7.8(c)(2).[1]  This required that he establish a violation of "the substantive rule that courts may not impose 'certain adult sentences . . . on juveniles who possess such diminished culpability that the adult standard SRA ranges and enhancements would be disproportionate punishment,' " Hinton, 525 P.3d at 162 (alteration in original) (quoting Ali, 196 Wn.2d at 239), by showing "by a preponderance of the evidence" his sentence "would have been shorter" if the sentencing judge had complied with Houston-Sconiers.  Forcha-Williams, 200 Wn.2d at 599.

George grounded his motion in CrR 7.8(b)(5), authorizing the trial court to grant relief from a judgment for "[a]ny other reason justifying relief from the operation of the judgment."[2]  We review a trial court's ruling on a CrR 7.8 motion for abuse of discretion.  State v. Lamb, 175 Wn.2d 121, 127, 285 P.3d 27 (2012).  Even under this deferential standard, we view a trial court's decision as based on untenable reasons "if it is based on an incorrect standard."  Id.  For a time, some Supreme Court case law suggested a violation of either of the dual mandates of Houston-Sconiers amounted to prejudice supporting collateral relief.  See In re Pers. Restraint of Domingo-Cornelio, 196 Wn.2d 255, 268, 474 P.3d 524 (2020), cert. denied, 141 S. Ct. 1753, 209 L. Ed. 2d 515 (2021).  But Forcha-Williams clarified the defendant must show they "would have received a lower sentence."  200 Wn.2d at 604.  Here, the trial court correctly analyzed Domingo-Cornelio and

---

[1] In addition, as the trial court correctly noted, it could proceed under CrR 7.8 only if the motion was "not barred by RCW 10.73.090."  CrR 7.8(c)(2).  A claim based on the substantive—i.e., retroactive—aspect of Houston-Sconiers "satisfies RCW 10.73.100(6)'s exemption to the [RCW 10.73.090] time bar."  Ali, 196 Wn.2d at 242.

[2] George also relied on CrR 7.8(b)(4), but he does not show the underlying judgment and sentence was "void."

Meippen as requiring that George show "he would have received a lesser sentence" if the sentencing court had complied with Houston-Sconiers. As this is the correct standard, we deferentially review the trial court's determination for abuse of discretion.

B

On appeal, the State concedes one of the dual mandates of Houston-Sconiers was violated: the sentencing court did not appreciate its discretion to sentence below the standard range. The State argues the sentencing court met the other mandate by considering the mitigating qualities of youth. The trial court ruled otherwise in its order on George's CrR 7.8 motion, explaining, "although the parties made comments related to George's age and traumatic childhood, no party spent significant time discussing youth as a factor *in the commission of the crime.*" The trial court's analysis aligns with case law. "The central question under article I, section 14[3] is whether and to what extent a juvenile offender's youthful characteristics were a factor *in the commission of their crime(s).*" State v. Anderson, 200 Wn.2d 266, 281 n.8, 516 P.3d 1213 (2022) (emphasis added); Forcha-Williams, 200 Wn.2d at 605 (focusing on whether offender's youth mitigates "their *culpability*" (emphasis added)); Houston-Sconiers, 188 Wn.2d at 22 ("Miller's holding rests on the insight that youth are generally less culpable *at the time of their crimes.*" (citing Miller v. Alabama, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012))). The comments of the State, defense counsel, and the

---

[3] Article 1, section 14 of Washington's Constitution provides protections similar to the Eighth Amendment of the United States Constitution, and forbids the infliction of cruel punishment.

court at sentencing focused on George's mental health, and to some extent his youth, in reference to future rehabilitation. In regard to elimination of the deadly weapon enhancement, the prosecutor explained this was to "give [George] the best opportunity he can to resolve these problems [and] allow science to help him." Defense counsel identified George's mental health as contributing to his crime, but did not reference youth or its hallmarks. The sentencing court identified youth as a mitigating factor, noting "not only has Mr. George not yet achieved adulthood, but he's had a pretty rocky juvenile life."

But none of the comments addressed whether "the 'hallmark features [of youth, including] immaturity, impetuosity, and failure to appreciate risks and consequences,' " factored into George's *commission* of the crime. Anderson, 200 Wn.2d at 281 n.8 (alteration in original) (quoting Miller, 567 U.S. at 477). Especially with the overlay of a youth having an evident, significant mental health diagnosis, and George's prompt confession, it could be argued that " 'immaturity' " and " 'failure to appreciate . . . consequences' " were factors in the offense. Id. While the State argues youth was discussed at sentencing, it does not claim these arguments were made or are foreclosed. As the trial court observed, "the voluminous information that was available to and reviewed by defense and the State was withheld and the [sentencing c]ourt was given only conclusory statements related to future risk posed by George." Cf. In re Pers. Restraint of Miller, 21 Wn. App. 2d 257, 264, 505 P.3d 585 (2022) ("Although Miller's age was mentioned, there was no direct reference to her maturity or ability to appreciate the consequences of her actions."). There are tenable grounds for the trial court's

9

conclusion that meaningful consideration of the qualities of youth as mitigating George's culpability did not occur, in violation of the second of the dual mandates of Houston-Sconiers.

The last step in the analysis is to consider actual and substantial prejudice. Forcha-Williams held "there are numerous factors to consider in determining whether a Houston-Sconiers error is prejudicial: whether the judge was presented with and considered the mitigating qualities of the offender's youth; whether the judge understood their discretion, where the imposed sentence falls within the standard range; and whether the judge articulated that they would have imposed a lower sentence if they could." 200 Wn.2d at 604. In Forcha-Williams, the sentencing court considered the mitigating qualities of youth, including argument that youth mitigated the defendant's culpability. Id. at 604. The court referenced the defendant's youth, but the record did "*not* indicate the court thought Forcha-Williams' youth was mitigating." Id. at 605 (emphasis added). The court set the low end of the defendant's indeterminate sentence above the midpoint. Id. Although the sentencing judge did not appreciate her discretion to impose a low end below the standard range, the record showed it was "*not* more likely than not" that the defendant would have received a lower sentence had the sentencing judge fully understood her discretion. Id. at 606 (emphasis added).

Beyond Forcha-Williams, a defendant has *shown* prejudice when the court sentenced at the low end of the range and stated it was doing so because it was the lowest permissible sentence and age was the primary consideration. Ali, 196 Wn.2d at 243-44. It was *evidence* of prejudice when a court omitted reference to

10

youth and sentenced at the low end while rejecting the State's request for a high end sentence. Domingo-Cornelio, 196 Wn.2d at 261, 268. And prejudice was *not shown* where a sentencing court rejected youth as a mitigating factor and sentenced at the high end of the standard range. Meippen, 193 Wn.2d at 312-13.

Here, the first two factors identified in Forcha-Williams support a conclusion of prejudice. Although youthfulness was mentioned, it was not mentioned in the context of mitigating George's culpability in the commission of the crime. It is undisputed the sentencing court did not appreciate the available discretion. As the trial court ruled, "Both errors are present here, thus the likelihood that George would receive a shorter sentence on remand is higher."

Locating George's sentence in the standard range requires some discussion. The sentencing court noted 288 months was above the midpoint, given a range of 240 to 320 months. But the prosecutor explained that number came from George's agreeing that if the State dismissed the deadly weapon enhancement, which added 24 months, George would support a sentence in "the mid range as if the two-year penalty was there." With the enhancement, the standard range would have been 264 to 344 months, and the agreed sentence of 288 months was *below* the midpoint of that range. In context, the sentencing court's acceptance of 288 months does not clearly indicate whether the sentence should be viewed as above or below the midpoint.

Last, the sentencing court's comments do not indicate explicitly the court would have imposed a lower sentence if it had appreciated the discretion Houston-Sconiers afforded. However, the record at sentencing included only calls from

George's and Latshaw's family for George to be sentenced for longer than the standard range allowed. The sentencing court's comments about the standard range came in the context of the court's declining requests to deviate upward. The sentencing court's adherence to the lower agreed sentence despite requests for upward departure suggests the sentencing court did see mitigating factors at work. While the record in Forcha-Williams did "*not* indicate the court thought Forcha-Williams' youth was mitigating," 200 Wn.2d at 605 (emphasis added), the opposite is true here, where the sentencing court identified George's age as a "mitigating circumstance[]." The sentencing court's reliance on mitigating factors provides a tenable basis for the trial court's conclusion that "had all the parties known, and the court considered, that the mitigating factors of youth allowed the court to deviate from the standard range, George likely would [have] been sentenced to a term lower than 288 months. George has [shown] the actual and substantial prejudice required to vacate his judgment and sentence."[4]

C

The State argues George's having engaged with the State in plea bargaining forecloses his ability to prove prejudice resulting from a Houston-Sconiers error.[5] The State says George "has not withdrawn his plea and is still

---

[4] The State argues the trial court improperly relied on new materials consisting of the Cunningham report. While the trial court mentioned the report, the report did not factor significantly in the trial court's reasoning, and we do not reach the question whether it was appropriately considered.

[5] The State has consistently indicated George's sentence was intended to allow him to benefit from RCW 9.94A.730 after serving 20 years. The State has not argued RCW 9.94A.730 provides George a sufficient remedy for a Houston-Sconiers violation precluding collateral relief. Cf. Hinton, 525 P.3d at 157-58 (RCW 9.94A.730 is adequate remedy precluding collateral relief for personal restraint

legally obligated to recommend the same sentence." The State cites no precedential authority supporting this argument.

In State v. Nevarez, 24 Wn. App. 2d 56, 59, 519 P.3d 252 (2022), review denied, 1 Wn.3d 1005, 526 P.3d 854 (2023), where the defendant had been 18 years old at the time of the crime, this court considered a CrR 7.8 motion in which the defendant sought to withdraw a guilty plea based in part on the sentencing court's not having considered youthfulness. In a split decision, we affirmed the trial court's denial of CrR 7.8 relief, because, for an 18 year old, the trial court was allowed, but not required, to consider the mitigating qualities of youth. Id. at 62. The dissent would have held that Houston-Sconiers required consideration of the mitigating qualities of youth for an 18 year old, and would have remanded for resentencing. Id. at 65 (Maxa, J., dissenting).

We considered an argument analogous to a Houston-Sconiers claim in State v. Zwede, 21 Wn. App. 2d 843, 508 P.3d 1042, review denied, 200 Wn.2d 1006, 516 P.3d 380 (2022). There, for a crime committed at the age of 19, the defendant pleaded guilty to one count of rape of a child in exchange for the State's dismissal of a second count and agreement to recommend a special sex offender sentencing alternative. Id. at 846-47. When his sentencing alternative was revoked five years later and the original sentence imposed, the defendant appealed arguing the trial court had discretion to modify his original sentence

_____

petitioner sentenced in 2001 to 37-year sentence); Ali, 196 Wn.2d at 228-29, 246 (RCW 9.94A.730 is not adequate remedy for personal restraint petitioner sentenced in 2011 to 26-year sentence). We therefore do not consider the question.

because of his young age. Id. at 846. A split panel of this court found no constitutional violation. Id. at 867. The majority cited several reasons for its conclusion, including that no Washington court had extended Houston-Sconiers-like principles "to an adult offender, albeit a youthful one, who was sentenced to a period of incarceration shorter than an actual or de facto life sentence."[6] Id. at 864. The majority relied on the plea agreement, noting the case was "unique" in that the defendant had "opted to seek and then actually received the benefit of an alternative sentence under which he could have served no time at all in prison had he followed his community custody conditions." Id. at 864-65. And, the defendant was not youthful at the time of the violations triggering the revocation. Id. at 865. The dissent would have held the guilty plea did "not alleviate the sentencing court of its duty to independently consider the role youthfulness may have played in the underlying criminal conduct and, if appropriate, to deviate from the constraints of the SRA." Id. at 872 (Hazelrigg, J., dissenting). This was because trial courts have discretion to deviate from an agreed resolution. In re Pers. Restraint of Breedlove, 138 Wn.2d 298, 309, 979 P.2d 417 (1999).

In Pers. Restraint of Miller, 21 Wn. App. 2d at 260, the defendant, who was 16 years old at the time she participated in a burglary and murder, reached a plea agreement with the State to cooperate, testify against other charged defendants, and plead guilty to an amended charge of first degree murder with a firearm

---

[6] The defendant in Zwede sought to apply In re Pers. Restraint of Monschke, 197 Wn.2d 305, 311-12, 482 P.3d 276 (2021), which held the protection against mandatory life without parole sentences applied to youthful, in addition to juvenile, offenders.

enhancement. We granted resentencing under Houston-Sconiers because "facts related to the mitigating qualities of Miller's youth were neither presented nor discussed at her sentencing," and "the sentencing court cannot be said to have meaningfully considered her youth." Id. at 264. The court did not address whether the plea barred collateral Houston-Sconiers relief, because "the State confirmed at oral argument that it would not accuse Miller of breaching the plea agreement if the matter were remanded for resentencing to address the mitigating factors of youth." Id. at 264 n.3.

Nevarez, Zwede, and Miller do not foreclose collateral Houston-Sconiers relief solely because the defendant pleaded guilty. Nevarez and Zwede, albeit in the context of adult offenders, imply a defendant's guilty plea may foreclose a conclusion that the defendant would have received a lesser sentence if youthfulness had been considered in compliance with Houston-Sconiers. But George's case lacks the factors the majority relied on Zwede. In Zwede, the defendant had bargained away one serious charge of rape to gain a sentencing alternative allowing him to avoid any prison time, and he had committed the violations leading to revocation of his sentencing alternative as a 24 or 25 year old. 21 Wn. App. 2d at 847, 864-65. George arguably similarly bargained away a serious deadly weapon enhancement. But the weapon enhancement was dismissed months after George had confessed and, in the prosecutor's words, accepted "timely" responsibility for his actions. In confessing within two days, cooperating with months of evaluation, and pleading guilty to first degree murder, George's circumstances are more like those of the 16 year old defendant in

15

Personal Restraint of Miller, who also cooperated with authorities and pleaded guilty to first degree murder. 21 Wn. App. 2d at 260.

There is authority that a defendant who pleads guilty waives the right to take advantage of *future* changes in the law. Lamb, 175 Wn.2d at 129-30. Lamb's focus on future changes in the law is underscored by its reliance on State v. Schmidt, 143 Wn.2d 658, 677-78, 23 P.3d 462, aff'd, 143 Wn.2d 658, 23 P.3d 462 (2001), which upheld a law newly making it a crime for a previously convicted felon to possess a firearm because the new law regulated future possession. In contrast, Houston-Sconiers establishes a constitutional rule with *retroactive* effect. Hinton, 525 P.3d at 162 (citing Ali, 196 Wn.2d at 239). The circumstances of George's plea in this case are not inconsistent with the trial court's conclusion that but for the Houston-Sconiers error, George would have received a lower sentence.

We affirm the trial court's order on George's CrR 7.8 motion and remand for resentencing.

_____
Birk, J.

WE CONCUR:

_____   _____
Chung, J.                          Mann, J.

16