[Nos. 23450-5-II; 23451-3-II; Division Two. April 14, 2000.]
24127-7-II; 24130-7-II.

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT LEONARD HAHN, *Appellant*.

*Pattie Mhoon*, for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney*, and *John Christopher Hillman* and *Barbara L. Corey-Boulet, Deputies*, for respondent.

SEINFELD, J. — As part of a plea bargain, Robert Hahn pleaded guilty to two counts of second degree assault with deadly weapon enhancements. He now seeks to have the deadly weapon enhancements deleted from his sentence, arguing that he assaulted the victims with his fists and feet and that the statutory definition of deadly weapon does not

include these appendages. We conclude that Hahn is bound by his plea bargain.[1]

FACTS

The State charged Hahn with first degree assault for the June 22, 1997, beating of Nathan Mohler and by separate information with first degree assault for the August 18, 1997, beating of Michael D. Warner.[2] The Mohler information alleged use of a deadly weapon; the Warner information did not.

On the day of trial, Hahn entered into a plea agreement whereby he agreed to plead guilty to two counts of assault in the second degree with deadly weapon enhancements. He stated that he had used his fist as a deadly weapon against Mohler and his foot as a deadly weapon against Warner.

In return, the State agreed to recommend 14-month standard range sentences, 12-month deadly weapon enhancements, and restitution. It also agreed to dismiss an unrelated burglary charge, and to concur in treating the two assault convictions as one strike.

The presentence report writer recommended a sentence for both counts totaling 26 months: 14 months for the assaults plus 12 months for the deadly weapon enhancement, running concurrently. At sentencing, Hahn opposed the deadly weapon enhancements contending, among other things, that neither fists nor feet fall under the statutory definition of a deadly weapon.

The trial court sentenced Hahn to 12 months for each

---

[1] A commissioner of this court previously affirmed the imposition of the deadly weapon enhancements and the restitution order but remanded for resentencing in light of *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 955 P.2d 798 (1998). Hahn moved to modify those portions of the commissioner's ruling that upheld the trial court, and this court agreed to consideration of the matter by a panel of judges. Order dated October 21, 1999.

[2] *State v. Hahn*, Nos. 97-1-02760-0 (Mohler) & 97-1-03523-8 (Warner) (Pierce County Super. Ct. May 28, 1998). Hahn separately appealed from each case and this court consolidated the appeals under cause number 23450-5-II.

assault to run concurrently and 12 months on each deadly weapon enhancement to run consecutively. In its oral ruling, the trial court stated that notwithstanding any legal questions as to the appropriate length of the sentence, it would have arrived at the same sentence on the basis of aggravating factors set forth in both presentence reports.

The presentence reports and medical bills indicated that both Mohler and Warner suffered serious injuries. After Hahn, with the aid of an accomplice, hit Warner multiple times in the head and body and jumped on his body, Warner was transported to the hospital with a ruptured spleen and internal bleeding. Hahn kicked Mohler several times in the head while an accomplice held him down. As a result, Mohler was in a coma for a month and required multiple surgeries for his brain injuries. He was left with impaired coordination and short-term memory loss.

The State sought restitution in the amounts of $66,973.59 for Mohler's medical treatment and $24,662.37 for Warner's treatment, plus another $325 for his personal property loss. Hahn complained that the medical records were insufficient to establish the correct amount of restitution but did not accept the court's offer of additional time to investigate the restitution claims. The trial court subsequently ordered restitution in the amounts requested.

## I. Deadly Weapon Enhancement

Hahn argues that the trial court erred in imposing sentence enhancements because fists and feet cannot constitute deadly weapons as RCW 9.94A.125 uses that term. The State concedes that "given the particular factual record in this case," neither Hahn's feet nor his fists fit within the statutory definition of deadly weapon.[3] Nonetheless, the State argues (1) that Hahn should be bound by his bargain, and (2) factual or technical deficiencies do not invalidate an otherwise valid plea agreement.

---

[3] The State did not charge Hahn with assaulting his victims with a deadly weapon. RCW 9A.36.021(1)(c). Rather, the State charged him with intentionally assaulting his victims and thereby recklessly inflicting substantial bodily harm, RCW 9A.36.021(1)(a), and both plea agreements reflect those charges.

██ ██ "Plea agreements which are intelligently and voluntarily made, with an understanding of the consequences, are accepted, encouraged and enforced in Washington." *In re Personal Restraint of Breedlove*, 138 Wn.2d 298, 310, 979 P.2d 417 (1999) (citing *State v. Perkins*, 108 Wn.2d 212, 216, 737 P.2d 250 (1987)). Plea agreements "are regarded and interpreted as contracts and both parties are bound by the terms of a valid plea agreement." *Breedlove*, 138 Wn.2d at 309 (citing *State v. Talley*, 134 Wn.2d 176, 182, 949 P.2d 358 (1998); *State v. Wakefield*, 130 Wn.2d 464, 480, 925 P.2d 183 (1996) (Sanders, J., concurring in part, dissenting in part)). Hahn has not moved to set aside the plea, nor does he allege that he entered the plea agreement involuntarily.

When the record reveals that the defendant made a voluntary and intelligent decision to enter a plea agreement, factual or technical deficiencies underlying the agreement will not invalidate it. *See In re Personal Restraint of Barr,* 102 Wn.2d 265, 269-71, 684 P.2d 712 (1984) (in indecent liberties case, parties misunderstood statutory age requirement, but defendant acknowledged guilt notwithstanding error); *State v. Majors*, 94 Wn.2d 354, 357-58, 616 P.2d 1237 (1980) (reasoning in dictum that if technical defect is not jurisdictional and defendant enters plea voluntarily and knowingly and is apprised of consequences, plea agreement is valid). But the trial court lacks the authority to impose a sentence pursuant to a plea agreement that is not authorized by statute. *In re Personal Restraint of Moore*, 116 Wn.2d 30, 33, 803 P.2d 300 (1991).

We agree with our commissioner's ruling on this matter. The commissioner wrote, in part:

> [Hahn] is bound by the bargain he made. *See Majors*. In *Majors*, the court upheld a negotiated plea of guilty to second degree murder and an habitual offender classification, despite the fact that the defendant was not technically an habitual offender. The court found that the defendant had bargained for and received a less severe minimum sentence than he would have been subject to on the original charge of first degree

murder. *See also Barr* (court held that a plea does not become invalid because a defendant chooses to plead to a lesser charge that was not committed in order to avoid conviction for a greater offense.)

Hahn understood when he entered his pleas to the amended informations that he was pleading guilty to second degree assault as charged. Both informations alleged that he committed the offenses with "a deadly weapon as defined in RCW 9.94A.125, and invoking the provisions of RCW 9.94A.310 and adding additional time to the presumptive sentence as provided in RCW 9.94A.370." His guilty plea statements contain paragraphs indicating he was pleading guilty to the crimes as charged in the information, and his own statements asserted that he had used a deadly weapon. When the trial court asked whether he understood and adopted each of the statements contained in those forms, Hahn answered that he did. The plea forms also contain paragraphs indicating Hahn's understanding that the standard range sentence he faced was "12+ - 14 + 12 months deadly weapon consecutive to all other time." Moreover, at the plea hearing, the prosecuting attorney advised the court that the standard range would be 36 to 38 months, based on consecutive 12-month deadly weapon enhancements on two concurrent sentences of 12 or 14 months and defense counsel did not dispute this figure.

The first degree assaults with which Hahn was initially charged carried a sentencing range of 93 to 123 months. *See* RCW 9.94A.030(31)(a), RCW 9.94A.320, RCW 9.94A.310. Moreover, the sentences would have had to be consecutive. RCW 9.94A.400(1)(b). Hahn's negotiated plea to a standard range sentence of 36 to 38 months on reduced charges allowed him to avoid the potential of a substantially increased penalty.

Commissioner's Order at 5-6 (citations and footnotes omitted).

This case is distinguishable from *In re Personal Restraint of Hews*, 108 Wn.2d 579, 593-94, 741 P.2d 983 (1987), where the court was dealing with an incompetent defendant. The *Hews* court held that "the defendant must understand the 'essential elements of the charge *to which he pleads guilty.*'" 108 Wn.2d at 591.

Hahn has presented no evidence showing that he did not understand the elements of the crime. Thus, this situation is more like *Majors*, where the Supreme Court stated, "there is 'no reason why a defendant who agrees to be designated a habitual criminal should not he held to his bargain', at least where there was some benefit to the defendant in agreeing to the bargain." *Hews*, 108 Wn.2d at 589 (quoting *Majors*, 94 Wn.2d at 358). Consequently, Hahn has failed to show that the deadly weapon enhancements were improper. *Moore*, 116 Wn.2d at 33.

## II. CONSECUTIVE DEADLY WEAPON ENHANCEMENTS

■ Hahn argued before our commissioner that *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 955 P.2d 798 (1998), requires that the terms of confinement for the sentence enhancements run concurrently when the predicate offenses are to run concurrently. The commissioner agreed and neither party sought modification of the commissioner's ruling; thus, we do not revisit the issue. As the commissioner stated, "The sentence as imposed is improper. Remand is necessary to permit the trial court to consider whether to impose an exceptional sentence or make the deadly weapon enhancements concurrent." Order at 7. Of course, if the trial court imposes an exceptional sentence, it must enter written findings of fact and conclusions of law pursuant to RCW 9.94A.120(3). *Breedlove*, 138 Wn.2d at 313; *State v. Murphy*, 98 Wn. App. 42, 51, 988 P.2d 1018 (1999).

## III. RESTITUTION

Hahn contends that the trial court violated his right to due process by ordering restitution based solely on the Department of Social and Health Services' (DSHS) "summary report itemizing amounts paid by DSHS to various providers." He contends this report did not adequately connect the expenditures to the crimes.

■ ■ The trial court derives its authority to order

restitution entirely from statutes. *State v. Moen*, 129 Wn.2d 535, 543, 919 P.2d 69 (1996); *State v. Smith*, 119 Wn.2d 385, 389, 831 P.2d 1082 (1992); *State v. Davison*, 116 Wn.2d 917, 919, 809 P.2d 1374 (1991). We review a restitution order under the abuse of discretion standard. *State v. Enstone*, 137 Wn.2d 675, 679, 974 P.2d 828 (1999); *Davison*, 116 Wn.2d at 919. A trial court abuses its discretion when its decision is manifestly unreasonable, or exercised on untenable grounds, or imposed for untenable reasons. *Enstone*, 137 Wn.2d at 679-80.

The following two statutory principles regarding the imposition of restitution are particularly relevant here: (a) "restitution ordered by a court pursuant to a criminal conviction shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury," RCW 9.94A.142(1), and (b) "[r]estitution shall be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property," RCW 9.94A.142(2).[4]

Here, there is no question that DSHS qualifies as a victim for purposes of restitution under RCW 9.94A.142. *See Davison*, 116 Wn.2d at 920-21 (city is "victim" for purposes of restitution because it paid wages to victim while victim could not work); *State v. Jeffries*, 42 Wn. App. 142, 144-45, 709 P.2d 819 (1985) (reimbursement to the Department of Labor and Industries for disability and medial expenses of assault victim); former RCW 9.94A.030(37) (1996). DSHS paid for the victims' expenses and then sought reimbursement of those payments through the prosecutor's victim assistance unit. *See* RCW 74.09.180; RCW 43.20B.060 (provisions authorizing DSHS to seek reimbursement).

■ Further, "easily ascertainable" damages "need not be established with specific accuracy." *State v. Fleming*, 75

---

[4]Neither victim applied for relief under the Crime Victims' Compensation Act (CVCA), chapter 7.68 RCW. Thus, the State concedes that RCW 9.94A.142(4), which provides for restitution where the victim is entitled to benefits under the CVCA, is not applicable.

Wn. App. 270, 274, 877 P.2d 243 (1994) (citing RCW 9.94A-.142(1); *State v. Johnson*, 69 Wn. App. 189, 194, 847 P.2d 960 (1993); *State v. Pollard*, 66 Wn. App. 779, 785, 834 P.2d 51 (1992)). Evidence of damages is sufficient if it provides the trial court with a reasonable basis for estimating losses and requires no speculation or conjecture. *Fleming*, 75 Wn. App. at 274-75; *Pollard*, 66 Wn. App. at 785. The trial court may determine the amount of restitution "by either (1) the defendant's admission or acknowledgment or (2) a preponderance of the evidence." *State v. Ryan*, 78 Wn. App. 758, 761, 899 P.2d 825 (1995) (citing *State v. Tindal*, 50 Wn. App. 401, 403, 748 P.2d 695 (1988)); *Enstone*, 137 Wn.2d at 682.

■ But there must be a causal relationship between the victims' medical expenses and the crime committed. *State v. Dedonado*, 99 Wn. App. 251, 256, 991 P.2d 1216 (2000); *State v. Woods*, 90 Wn. App. 904, 907, 953 P.2d 834, *review denied*, 136 Wn.2d 1021 (1998). "A causal connection exists when, 'but for' the offense committed, the loss or damages would not have occurred." *State v. Enstone*, 89 Wn. App. 882, 886, 951 P.2d 309 (1998) (citing *State v. Hunotte*, 69 Wn. App. 670, 676, 851 P.2d 694 (1993)), *aff'd*, 137 Wn.2d 675, 974 P.2d 828 (1999).

Hahn, citing *State v. Bunner*, 86 Wn. App. 158, 160, 936 P.2d 419 (1997), contends that the DSHS records amounted to nothing more than a list of expenses that bear no relationship to the claimed damages. In *Bunner*, the trial court relied on a DSHS medical recovery report that itemized amounts the State had paid for the victim's treatment but did not indicate "why medical services were provided." 86 Wn. App. at 160. The reviewing court held that the evidence was insufficient to establish a causal relationship between the expenses and the charged crime. Thus, it reversed the restitution order. *Bunner*, 86 Wn. App. at 162.

Although the record here contains evidence of the victims' substantial injuries, as in *Bunner*, there is no statement linking the charged amounts to any particular

symptoms or treatments.[5] Regarding Warner, the medical reports merely state the name of the service provider, the service date, date paid, billed amount and amount paid. Even if we infer a connection from the fact that nearly all the individually listed services were provided within five days of the crime, these services account for only $3,921.52 of DSHS's total claim of $24,662.37.[6] Thus, $20,740.85 remains unexplained. *Bunner*, 86 Wn. App. at 160.

Regarding Mohler, again the record merely identifies numerous medical services rendered either on the date of the crime or shortly thereafter. This circumstantial evidence, alone, is insufficient to allow the sentencing court to estimate losses by a preponderance of the evidence without speculation or conjecture. *Bunner*, 86 Wn. App. at 162.

Accordingly, we remand the restitution orders to the trial court for the taking of additional evidence to determine the causal connection between the DSHS expenditures and the charged crimes. *Dedonado*, 99 Wn. App. at 256, 258 (remanding so trial court could fix proper amount of restitution). We also remand for resentencing in light of *Charles*, as previously ordered in the commissioner's unchallenged ruling.

ARMSTRONG, C.J., and HUNT, J., concur.

Review granted at 141 Wn.2d 1025 (2000).

---

[5]Hahn also complains that the DSHS records do not name him as defendant but rather a person named Moser. However, the presentence investigation report indicates that both Hahn and Moser assaulted Warner. And at the restitution hearing, Hahn identified Moser as a separately charged codefendant.

[6]These figures do not include Warner's separate restitution estimate of $325 in personal property loss. And we do not include certain DSHS payments duplicated in the record.