IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  45883-7-II |
| Respondent, | Consolidated with No. 46546-9-II |
| v. | |
| CANDACE LYNN RALSTON, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — Candace Ralston appeals her exceptional sentence following an

Alford plea.[1]  Ralston pleaded guilty to first degree theft[2] and forgery,[3] and stipulated to an

aggravating factor of major economic offense[4] for both counts.  The sentencing court imposed a

concurrent sentence of 96 months on the theft charge and 36 months on the forgery charge.  The

court ordered restitution totaling $294,115.73, including $66,427.56 to CHUBB Insurance

Company for investigative fees, and $8,607.54 to CHUBB for employee expenses.  The court

also imposed a total of $39,211.35 in legal financial obligations (LFOs).  Ralston argues (1) the

court imposed a clearly excessive exceptional sentence, (2) the court improperly awarded

restitution for the investigative fees and employee expenses based on speculation and conjecture,

---

[1] *North Carolina v. Alford*, 500 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] RCW 9A.56.030.

[3] RCW 9A.60.020.

[4] RCW 9.94A.535(3)(d).

No. 45883-7-II
Cons. with No. 46546-9-II

and (3) the court improperly imposed LFOs without finding Ralston could or would be able to pay them. We affirm.

## FACTS

### I. THEFT AND FORGERY

Candace Ralston worked at Alderbrook Resort & Spa (Alderbrook)[5] in Mason County for eight years. Between November 2009 and April 2011, Ralston misappropriated $213,581.15 from Alderbrook. On January 6, 2014, in exchange for the prosecutor's agreement to drop two charges, Ralston entered an Alford plea of guilty to one count of first degree theft and one count of forgery. Ralston stipulated to the aggravating factor of major economic offense for both counts. The court found that there were sufficient facts to support the plea and found the aggravating factor for both counts.

### II. SENTENCING

The sentencing court imposed an exceptional sentence of 96 months for first degree theft and 36 months for forgery, to run concurrently, based on the aggravating factor of major economic offense.[6] The court noted there were multiple incidents, the actual monetary loss of the thefts were "far greater than the typical First Degree Theft," the theft took a high degree of sophistication and planning and went over an extended period of time, and Ralston abused her position of trust with respect to her employer. 2 Verbatim Report of Proceedings (VRP) at 272.

---

[5] The sentencing court and briefs often refer to "North Forty." North Forty Lodging, LLC is the lodging company that owns Alderbrook Resorts and for ease of reference we use the term Alderbrook.

[6] The standard ranges for first degree theft and forgery are two to six months and zero to ninety days, respectively. RCW 9.94A.510.

The sentencing court ordered Ralston to pay $5,678.50 in court costs, which included discretionary fees of $200.00 and $4,878.50 for filing and sheriff service, respectively. The court also ordered Ralston to reimburse the county $34,133.85 for the cost of court appointed counsel and defense experts. This resulted in a total legal financial obligation of $39,211.35.

After the sentencing court imposed the LFOs, it asked defense counsel what type of employment and monthly income Ralston would likely have after her release from prison. Counsel responded that given her background and conviction, "she's probably not going to get any type of employment that she's previously had," and any employment she would be able to obtain upon release would be "on the low end somewhere." 2 VRP at 273. The sentencing court then set minimum monthly payments at $25.00 per month, noting, "Obviously, that isn't going to be enough to even cover the interest that accrues at twelve percent per annum." 2 VRP at 273. Ralston made no objections at sentencing.

### III. RESTITUTION

At the restitution hearing, the prosecutor itemized the restitution requests to the court. The sentencing court ordered a total of $294,115.73 in restitution payments to CHUBB, Alderbrook, and Key Bank.[7] Of the restitution ordered to CHUBB, the court ordered $8,607.54 for employee expenses and $66,427.56 for accounting services performed by Moss Adams, LLP (Moss Adams).

---

[7] Alderbrook maintained an insurance policy with CHUBB that covered employee theft. Under this policy, CHUBB compensated Alderbrook's total loss. Key Bank reimbursed Alderbrook for two fraudulent checks forged by Ralston.

Alderbrook hired Moss Adams to investigate the theft. The $66,427.56 represented a 10 percent reduction of the full fee for Moss Adams' services because the State admitted that a portion of the hours billed by Moss Adams were spent analyzing Ralston's alleged fraudulent gift card transactions unrelated to the charges ultimately filed. The sentencing court found the investigative fees were appropriate items of restitution because the work done by the accounting firm was the result of the theft by Ralston.

Additionally, the court ordered $8,607.54 in restitution to compensate for costs incurred for employee salaries devoted to dealing with Ralston's thefts. In making its oral restitution ruling, the sentencing court stated it looked to the restitution estimate signed by the president of North Forty Lodging, LLC, Brian McGinnis, an excerpt from an e-mail from Alderbrook employee Sarah Delgado that she had estimated the time spent over the course of the investigation, and the efforts of employees who went through receipts, ledgers, and journal entries in investigating the theft to determine the amount of restitution requested for employee expense was reasonable.

The restitution estimate submitted by McGinnis listed the three Alderbrook employees who dealt with Ralston's thefts, outlined the number of hours each employee spent on the case, and calculated the employee expense Alderbrook incurred for each worker.

## ANALYSIS

### I. EXCESSIVE SENTENCE

Ralston argues that the sentencing court abused its discretion when it imposed a clearly excessive sentence against her. We disagree.

No. 45883-7-II
Cons. with No. 46546-9-II

Under RCW 9.94A.585(4)(b), we may reverse an exceptional sentence if it is clearly excessive. We review whether an exceptional sentence is clearly excessive for abuse of discretion. *State v. Knutz*, 161 Wn. App. 395, 410, 253 P.3d 437 (2011). When an exceptional sentence is based on proper reasons, we will hold it clearly excessive only "if its length, in light of the record, 'shocks the conscience.'" *Knutz*, 161 Wn. App. at 410-11 (quoting *State v. Kolesnik*, 146 Wn. App. 790, 805, 192 P.3d 937 (2008)). A sentence shocks the conscience if it is one that "no reasonable person would adopt." *Knutz*, 161 Wn. App. at 411 (quoting *State v. Halsey*, 140 Wn. App. 313, 324-25, 165 P.3d 409 (2007)). The sentencing court has "all but unbridled discretion in setting the length of the sentence." *Halsey*, 140 Wn. App. at 325 (quoting *State v. Creekmore*, 55 Wn. App. 852, 864, 783 P.2d 1068 (1989)).

As part of her Alford plea, Ralston stipulated that there was sufficient evidence to support the aggravating factor of her crime being a major economic offense. The sentencing court found the theft to be a major economic offense in a variety of ways.[8] Ralston does not challenge the fact that the sentencing court imposed an exceptional sentence. Rather, she contends that her exceptional sentence is clearly excessive. We disagree.

Ralston attempts to bolster her argument that her exceptional sentence is clearly excessive by comparing her sentence to sentences in other cases. In *State v. Ritchie*, our

---

[8] The sentencing court found Ralston's crimes to constitute a major economic offense based on the following: (1) the offenses involved actual monetary loss substantially greater than typical for the offense of first degree theft and/or forgery; (2) the offenses involved a high degree of sophistication and planning; (3) the offenses occurred over a lengthy period of time; and (4) Ralston used her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the crime. RCW 9.94A.535(3)(d).

5

Supreme Court rejected the notion that the length of an exceptional sentence must be proportionate to sentences in similar cases. 126 Wn.2d 388, 396, 894 P.2d 1308 (1995). *Ritchie* rejected any "mechanical approach" of comparing the sentence at issue with the average sentence for the same crime, or the average sentence for more serious crimes, or comparisons to the midpoint of the standard ranges for the crime at issue. 126 Wn.2d at 397. Rather, the salient inquiry regarding the length of the exceptional sentence is whether the sentencing court abused its discretion in imposing that sentence. 126 Wn.2d at 392.

This sentence, in light of the record, does not shock the conscience. Ralston stole over $200,000 from her employer over a period of one and a half years. The sentencing court found this amount to be substantially greater than typical for the offense of first degree theft and/or forgery. Ralston accomplished her theft using a high degree of sophistication and planning over a lengthy period of time, and she misappropriated more than fifty cash deposits, falsified accounting records, and forged checks. The sentencing court found that Ralston used her position of trust, confidence, and fiduciary responsibility to facilitate her crime. At sentencing, Alderbrook's owners' representative and Ralston's assistant each spoke to the financial and emotional toll her actions took. We hold that Ralston's sentence is not excessive.

## II. RESTITUTION ORDER

Ralston argues that the sentencing court improperly relied on speculation and conjecture in setting her restitution order, and requests that we vacate the order and remand for a new restitution hearing. Ralston specifically disputes the sentencing court's restitution award for investigative fees and employee expenses. We affirm the sentencing court's restitution order.

6

A sentencing court's order of restitution will not be disturbed on appeal absent abuse of discretion. *State v. Tobin*, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007). A sentencing court abuses its discretion when its decision is manifestly unreasonable, or exercised on untenable grounds, or imposed for untenable reasons. *State v. Hahn*, 100 Wn. App. 391, 398, 996 P.2d 1125 (2000). It is the State's burden to prove the amount of restitution by a preponderance of the evidence. 100 Wn. App. at 399. Although the State need not prove the amount with specific accuracy, the restitution award must be based on easily ascertainable damages and the evidence must be sufficient to allow the sentencing court to estimate the damages without having to engage in speculation or conjecture. 100 Wn. App. at 398-99. The legislature intended "to grant broad powers of restitution" to the sentencing court. *Tobin*, 161 Wn.2d at 524. We do not engage in overly technical construction that would permit the defendant to escape from just punishment. 161 Wn.2d at 524.

Ralston argues the award of investigative fees was improper because Moss Adams' invoices were not itemized, and the deduction of 10 percent from Adams' total fees was mere speculation. Ralston contends that the 10 percent reduction of Moss Adams' total invoice was "nothing more than a guess." Br. of Appellant at 16. However, the 10 percent reduction was determined after asking a representative of Moss Adams how much time was spent on the gift card investigation. In ruling on this portion of the restitution order, the sentencing court found that the work done by Moss Adams was a result of the theft by Ms. Ralston and that it was necessary. It is clear that all of the Moss Adams expenses were incurred as a direct result of Ralston's thefts. In conducting its investigation, Moss Adams did not itemize each portion of their investigation according to what specific charges would eventually be brought by the

prosecutor. But Moss Adams was able to give a reasonable estimate that was more than speculation or conjecture.

Ralston also argues that the restitution award for employee expenses was an abuse of discretion because Alderbrook had not kept track of the hours they devoted to the theft. However, the number of hours each employee spent on the investigation of Ralston's thefts was sufficiently estimated and outlined by McGinnis and Delgado. In ruling on this portion of the restitution order, the sentencing court also considered the extensive receipts, ledgers, and journal entries the employees sifted through in investigating the theft to determine the amount of restitution requested for employee expenses was reasonable. While it is true this evidence is based on estimation, given the totality of the circumstances, the estimates were reasonable and went beyond mere speculation or conjecture.

We recognize that the restitution statutes were intended to require the defendant to face the consequences of her criminal record. *Tobin*, 161 Wn.2d at 524. We hold that the sentencing court relied on sufficient evidence in determining the amount of restitution to award for employee expenses.

### III. DISCRETIONARY LEGAL FEES

Finally, Ralston argues that the sentencing court improperly imposed LFOs without considering her ability to pay. Ralston did not challenge this finding during sentencing and, thus, she cannot do so as a matter of right for the first time on appeal. *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492 (2013), *remanded*, 182 Wn.2d 827, 344 P.3d 680 (2015). Our decision in *Blazina*, over a year before Ralston's July 2014 sentencing hearing, provided notice that the failure to object to LFOs imposed at sentencing waived the issue on appeal. 174 Wn. App. at

911. As our Supreme Court noted in reviewing our decision in *Blazina*, an appellate court may in its discretion decline to reach such unpreserved claims of error. *Blazina*, 182 Wn.2d at 830. Because Ralston had sufficient notice of her obligation to object to LFOs imposed at sentencing to preserve the issue for appeal, we exercise our discretion and decline addressing Ralston's contention with her LFOs for the first time on appeal.

CONCLUSION

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Lee, J.

_____
Sutton, J.