IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | |
| | ) | No. 40334-3-III |
| Takoda W.W. Picker, | ) | |
| | ) | |
| Petitioner. | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |

COONEY, J. — Takoda Picker was charged with two counts of assault in the second degree. He was later found not guilty by reason of insanity (NGRI) and committed to the care and custody of the Secretary of the Department of Social and Health Services (Department). More than seven years later, Mr. Picker filed a "Motion for Relief from Judgment of Sentence" under CrR 7.8. The superior court transferred the motion to this court as a personal restraint petition (PRP).

In his PRP, Mr. Picker claims (1) he received ineffective assistance from his trial counsel; (2) his plea of NGRI was not made knowingly, voluntarily, and intelligently; (3) he was denied protections for those with developmental disabilities; and (4) the

probable cause affidavit was tainted and excluded key evidence. In response, the State

challenges the timeliness of Mr. Picker's PRP.

We deem Mr. Picker's PRP timely and deny the petition on the merits.

BACKGROUND

On August 17, 2016, the Asotin County Sheriff's Office responded to a 911

call from Jesus Yzaguirre who alleged his brother, Takoda Picker, had assaulted him.

Sheriff's Deputy Nathan Conley responded and interviewed Mr. Yzaguirre and

Mr. Picker's sister, Tekiyah Kugler. Deputy Conley initially misidentified Ms. Kugler as

Mr. Picker's other sister, Tasheena Picker. The misidentification was memorialized in

Deputy Conley's probable cause affidavit, dated August 18, 2016. Deputy Conley

promptly recognized his error and filed a "Supplemental Narrative" the next day. In it,

Deputy Conley wrote:

> Previously listed as the female witness, identified as Picker, Tasheena . . . is
> an incorrect identification. I later determined the correct identification of
> the present female witness to the incident, identified as Kugler, Tekiyah….
> For the purposes of the original Probable Cause Narrative, all mentions of
> Picker, Tasheena are incorrect.

Second Response to PRP at 23. [1]

---

[1] The State provided the "Supplemental Investigation Narrative" as an attachment
to its response brief.

In the probable cause affidavit, Deputy Conley states that Mr. Yzaguirre told him Mr. Picker had "aggressed at him" in an "aggressive and confrontational demeanor and posture" while armed with a baseball bat in one hand and a knife in the other. Clerk's Papers (CP) at 4. Mr. Yzaguirre further reported that Mr. Picker raised the bat toward him and placed the knife within two inches of his face.

Mr. Picker was charged with two counts of assault in the second degree on August 18, 2016. Two weeks later, the court ordered the Department to evaluate Mr. Picker's competency. Straightaway, Michael Morrison, PhD., in conjunction with developmental disabilities professional, Randall Strandquist, PsyD., evaluated Mr. Picker. In a report dated September 16, 2016, Dr. Morrison and Dr. Strandquist concluded that Mr. Picker lacked the capacity to understand the proceedings against him and to assist in his own defense. They noted there was "very strong support for the conclusion that [Mr. Picker] is not developmentally disabled" and "did not find any basis for concluding that [Mr. Picker] has a developmental disorder." CP at 47. In reliance on this evaluation, the court issued a 90-day stay of proceedings and ordered the Department to provide Mr. Picker with competency restoration treatment.

Dr. Morrison later re-evaluated Mr. Picker. In a report dated December 12, 2016, Dr. Morrison opined that Mr. Picker lacked the capacity to understand the proceedings against him and to assist in his own defense. Based on Dr. Morrison's evaluation, the

court issued a second 90-day stay of proceedings and ordered the Department to provide

Mr. Picker with competency restoration treatment.

Dr. Morrison conducted a third evaluation of Mr. Picker in February 2017. In a

report dated March 1, 2017, Dr. Morrison concluded that Mr. Picker "is currently

adequately stabilized by treatment with psychiatric medications and . . . is functioning

well enough to return to court to resolve the pending criminal case." CP at 70. Based on

Dr. Morrison's evaluation, and by agreement of the parties, the court found Mr. Picker

competent to proceed to trial. Concurrent to the finding of competency, the court ordered

the Department to evaluate Mr. Picker's mental state and sanity.

On May 18, 2017, Mr. Picker filed a motion for acquittal by reason of insanity.

Relying on the evaluations of Richard Gallaher, PhD., and Christina Zampich, PsyD., the

court found Mr. Picker was competent to proceed with a plea of NGRI, was legally

insane at the time of the offenses, and acquitted him of both counts. The court committed

Mr. Picker "to the care and custody of the Secretary of the Department of Social and

Health Services for treatment at a state mental hospital for the criminally insane." CP at

33.

On February 5, 2024, Mr. Picker filed a "Motion for Relief from Judgment of

Sentence," accompanied by the "Declaration of Tasheena Picker in Support of

Defendant's CrR 7.8 Motion to Vacate Judgment and Sentence." In her declaration,

Ms. Picker states she "did not learn what the police reports about my brother's arrest said

4

until recently" and "was shocked to learn that the police report contains inaccurate information and appears to have manufactured quotes that I never said." Dec. of Picker at 1-2. Ms. Picker claims she "witnessed what happened after the police were called and just before they arrived, but [she] did not witness any of the events contained in the police report." Dec. of Picker at 2. Ms. Picker asserts the deputies "wrote a report that seemed to suit their needs by lying about [her] statements." *Id.*

Ultimately, the trial court determined Mr. Picker's motion was time barred under RCW 10.73.090, that Mr. Picker had not made a substantial showing that he was entitled to relief, and resolution of the motion would not require a factual hearing. The court transferred Mr. Picker's motion to this court as a PRP.

ANALYSIS

A PRP is an extraordinary form of relief that requires the petitioner to "meet a high standard before this court will disturb an otherwise settled judgment." *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011). The petitioner in a PRP bears the burden of demonstrating error and, if the error is constitutional, that the petitioner is "actually and substantially prejudiced." *Id.* If not constitutional, the petitioner must show the error represents a "fundamental defect . . . that inherently resulted in a complete miscarriage of justice." *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 506, 301 P.3d 450 (2013). These heightened standards of review apply to all issues for which a petitioner had a previous opportunity for judicial review and are rooted

5

in the court's interest in economy, finality, and integrity of the trial process, and the petitioner's prior access to judicial review. *Coats*, 173 Wn.2d at 132; *In re Pers. Restraint of Meippen*, 193 Wn.2d 310, 315, 440 P.3d 978 (2019).

TIMELINESS

The State argues Mr. Picker's PRP is untimely, and therefore time-barred, because it was filed more than one year after the judgment of acquittal became final. We conclude the PRP is timely due to the trial court's failure to advise Mr. Picker of his right to collateral attack.

A collateral attack is a means of providing "postconviction relief other than a direct appeal." RCW 10.73.090(2). A PRP is a form of collateral attack. *Id*. With limited exceptions, "[n]o petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face." RCW 10.73.090(1). A judgment becomes final on the date it is filed with the trial court. RCW 10.73.090(3)(a). Courts do not have discretion to waive or alter the limitation period in RCW 10.73.090, and the petitioner carries the burden to prove the applicability of an exception to the statute of limitations. *Shumway v. Payne*, 136 Wn.2d 383, 400, 964 P.2d 349 (1998).

A judgment of NGRI is subject to the time limits of RCW 10.73.090. *State v. Schwab*, 141 Wn. App. 85, 89-90, 167 P.3d 1225 (2007). When the court pronounces a sentence, it is obligated to advise the defendant of the time limitations of RCW 10.73.090

6

and 10.73.100. RCW 10.73.110. If a court finds a defendant NGRI, it shall advise the defendant "of the time limits on the right to collateral attack imposed by RCW 10.73.090 and .100." CrR 6.16(d)(1)(ii). CrR 6.16(d)(2) requires the court advise a defendant found NGRI of the following:

> You are further advised that if you wish to petition or move for collateral attack on any order of hospitalization or order mandating alternative treatment less restrictive than detention in a state hospital, including but not limited to any personal restraint petition, state habeas corpus petition, motion to vacate judgment, motion to withdraw guilty plea, motion for new trial or motion to arrest judgment, you must do so within one year of the final judgment in this matter, except as provided for in RCW 10.73.100.

When a statute requires a court to notify a defendant of a time bar and the notice is not given, the omission creates an exemption to the time bar. *In re Pers. Restraint of Vega*, 118 Wn.2d 449, 450-51, 823 P.2d 1111 (1992).

Here, the record lacks any indication that the trial court advised Mr. Picker of his right to collateral attack. This omission creates an exemption to the one-year time bar of RCW 10.73.090. Consequently, we deem Mr. Picker's PRP timely and proceed to the merits.

INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Picker claims he received ineffective assistance from his trial counsel because (1) his attorney was later disbarred; (2) he had a total of only 30 minutes of communication with his attorney; and (3) his attorney failed to investigate the State's case. We disagree with each contention.

7

Criminal defendants have a constitutionally guaranteed right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018). A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal. *State v. Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007).

To succeed on a claim of ineffective assistance of counsel, the defendant bears the burden of showing (1) that his counsel's performance fell below an objective standard of reasonableness based on consideration of all the circumstances and, if so, (2) there is a reasonable probability that but for counsel's poor performance the outcome of the proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If either element is not satisfied, the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

In reviewing the record for deficiencies, there is a strong presumption that counsel's performance was reasonable. *McFarland*, 127 Wn.2d at 335. The burden is on a defendant alleging ineffective assistance of counsel to show deficient representation. *Id*. The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient. *Kyllo*, 166 Wn.2d at 863. A sufficient basis to rebut

legitimate trial strategy exists when the defendant demonstrates there is "no conceivable legitimate tactic explaining counsel's performance." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

A defendant must affirmatively prove prejudice, not simply show that "the errors had some conceivable effect on the outcome." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant demonstrates prejudice by demonstrating that the proceedings would have been different but for counsel's deficient representation. *McFarland*, 127 Wn.2d at 337.

As an initial matter, Mr. Picker citing *State v. McNeair*, 88 Wn. App. 331, 340, 944 P.2d 1099 (1997), in reply to the State's response, argues the State failed to directly address his arguments related to ineffective assistance of counsel and has therefore conceded his claimed errors. We disagree with his interpretation of *McNeair*. In *McNeair*, it was the *appellant* who failed to present an argument or authority for his claimed error. *Id.* There, we deemed the appellant's "failure to make such an argument as a concession that such an argument has no merit." *Id*. The State, as the respondent, has not conceded Mr. Picker's claimed errors by failing to directly address his arguments.

Mr. Picker asserts he received ineffective assistance of counsel because his attorney was later disbarred. Mr. Picker's case was adjudicated on May 18, 2017. His attorney was disbarred in 2019 for a single act that occurred in July 2018 involving a

different client.[2]  Mr. Picker does not establish how his attorney's subsequent disbarment actually and substantially prejudiced him.  Mr. Picker's bare allegation is insufficient to overcome the strong presumption that his attorney's performance was reasonable.

Mr. Picker next claims he received ineffective assistance from his attorney because he accumulated merely 30 minutes of communication with him.  The basis for Mr. Picker's alleged minimal contact with his attorney appears to be grounded in a statement he made to Dr. Morrison during the February 2017 competency evaluation. Mr. Picker has not filed a declaration regarding the adequacy of representation, nor the amount of time spent in consultation with his attorney.  Dr. Morrison's notation that Mr. Picker claimed a total of 30 minutes with his attorney was made approximately 3 months before the case was adjudicated and while Mr. Picker was deemed not competent to stand trial.  A petitioner's allegations of unlawful restraint must have evidentiary support, and we may decline review without proper evidentiary support.  *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992).

Mr. Picker has failed to present sufficient evidence to support his contention that he amassed only 30 minutes of communication with his attorney.  Further, even if we

---

[2] Findings of Fact, Conclusions of L. & Hr'g Officer's Recommendation, *In re Laws*, Proceeding No. 19#00021 (WSBA Disciplinary Bd. July 18, 2019), https://www.mywsba.org/WebFiles/CusDocs/000000036654-0/013.pdf.

were to find Mr. Picker was given deficient representation, Mr. Picker fails to present any evidence of prejudice.

Lastly, Mr. Picker argues he received ineffective assistance from his attorney because his attorney failed to adequately investigate the State's case. Mr. Picker submitted the declaration of Ms. Picker to support his argument. In the declaration, Ms. Picker states she "did not witness the incident police described between my brothers, Jesus ("Jessie") and Takoda," and that the "police report contains inaccurate information and appears to have manufactured quotes that I never said." Dec. of Picker at 2.

As an initial matter, Mr. Picker has failed to designate any police reports for our review. Presumably, Ms. Picker is referring to Deputy Conley's probable cause affidavit that misidentified Ms. Kugler as Ms. Picker. However, Deputy Conley submitted a supplemental affidavit the following day, replacing Ms. Picker's identity with Ms. Kugler's, who witnessed the events and provided information to the deputies. The probable cause affidavits do not attribute any quotes or witness statements to Ms. Picker.

Turning to the merits, Ms. Picker alleges Mr. Picker's attorney failed to contact her and develop her as a witness. However, since Mr. Picker's attorney was provided Deputy Conley's supplement affidavit, listing Ms. Kugler as the correct witness, it was reasonable for Mr. Picker's attorney to not contact Ms. Picker who, admittedly, did not witness the alleged assault. Mr. Picker has failed to provide evidence sufficient to

11

demonstrate he was actually and substantially prejudiced by his attorney's failure to contact Ms. Picker.

Mr. Picker is unable to overcome the strong presumption that his trial counsel's performance was reasonable. He has further failed to show how he was actually and substantially prejudiced by his attorney's purported deficient representation.

PLEA OF NGRI

Mr. Picker claims he was not competent when he entered his plea of NGRI, his developmental disabilities were never addressed, and he was uninformed about his rights and the potential sentence. We disagree with each argument.

If, as here, a petitioner in a PRP alleges a constitutional error in entering a plea, the petitioner may challenge the plea in a collateral proceeding. *In re Pers. Restraint of Barr*, 102 Wn.2d 265, 269, 684 P.2d 712 (1984). To be constitutionally valid, a plea must be made "knowingly, intelligently, and voluntarily, with the accused being apprised of the nature of the charges against him." *Id.*

In challenging the validity of his plea of NGRI, Mr. Picker largely relies on his first two competency evaluations that found him not competent to stand trial. Indeed, Dr. Morrison found Mr. Picker lacked adequate capacity to understand court proceedings and participate in his own defense in both the September 14 evaluation and December 12 evaluation. However, after Mr. Picker completed two 90-day restoration treatment sessions, Dr. Morrison opined that he was adequately stabilized by the treatment and

psychiatric medications and "currently has the capacity to have a rational understanding of court proceedings, make rational choices between whatever alternatives are available to him for resolving the case, and adequately participate in his own defense." CP at 70.

The sole expert opinion for the court's consideration in finding Mr. Picker competent was Dr. Morrison's third evaluation. By the third evaluation, Dr. Morrison had monitored Mr. Picker's treatment, medications, and overall progress for six months. Mr. Picker has failed to show he was actually and substantially prejudiced by the court's reliance on Dr. Morrison's opinion that his competence had been restored and accepting his plea of NGRI.

Mr. Picker next argues his developmental disabilities, acknowledged by two court orders, went unaddressed. As an initial matter, the court does not diagnose developmental disabilities. Rather, "[i]f the court is advised by any party that the defendant may have a developmental disability, the evaluation must be performed by a developmental disabilities professional." RCW 10.77.060(c).

Here, the court was advised that Mr. Picker may have developmental disabilities. In response, the court ordered that the competency evaluation includes a qualified developmental disability professional. In compliance with the court order, Dr. Strandquist, a developmental disabilities professional, participated in the evaluation and consulted with Dr. Morrison. Ultimately, Dr. Strandquist found "very strong support for

13

the conclusion that [Mr. Picker] is not developmentally disabled" and "did not find any basis for concluding that [Mr. Picker] has a developmental disorder." CP at 47.

Contrary to Mr. Picker's argument that "he had developmental disabilities acknowledged by two court orders," the only competent evidence before the trial court was Dr. Strandquist's opinion that he was not developmentally disabled. Motion for Relief at 16. Mr. Picker has failed to establish that the trial court's failure to address his purported developmental disabilities inherently resulted in a complete miscarriage of justice.

Mr. Picker next argues that he was misinformed of the maximum potential sentence and was not fully informed at the NGRI hearing. Specifically, Mr. Picker directs us to a handwritten modification of the maximum fine on the statement of defendant for acquittal by reason of insanity and the court's failure to check a box indicating whether Mr. Picker had read the statement or his lawyer read it to him.

In the statement of defendant for acquittal by reason of insanity, the maximum fine is listed as "ten thousand dollars." CP at 26. The "ten" is circled and what appears to be initials and the number "20" is handwritten below. *Id*. Presumably, this indicates that Mr. Picker was properly advised the maximum fine was $20,000. Even if we were to assume otherwise, Mr. Picker is unable to show the misinformation inherently resulted in a complete miscarriage of justice. The court did not order him to pay any fines.

14

Mr. Picker claims he was not fully informed when he entered the NGRI plea because the court failed to check a box declaring whether Mr. Picker had previously read the statement or his attorney had read it to him.

"When the record reveals that the defendant made a voluntary and intelligent decision to enter a plea agreement, factual or technical deficiencies underlying the agreement will not invalidate it." *State v. Hahn*, 100 Wn. App. 391, 395, 996 P.2d 1125 (2000). Although the trial court neglected to check a box indicating whether Mr. Picker had read the statement or it was read to him, Mr. Picker signed the statement. Paragraph 13 of the statement reads, "My lawyer has explained to me, and we have fully discussed, all of the above paragraphs (1 through 13), and I have received a copy of this motion and statement. I have no further questions to ask of the Court." CP at 28. Further, Mr. Picker's attorney attested, "I have read and discussed this statement with the Defendant and believe that the Defendant is competent and fully understands the statement." CP at 28.

Mr. Picker has failed to establish that the trial court's failure to indicate whether he read the statement or the statement had been read to him inherently resulted in a complete miscarriage of justice.

PROTECTIONS FOR PERSONS WITH DEVELOPMENTAL DISABILITIES

Mr. Picker argues he was denied statutory protections afforded to those with developmental disabilities. We disagree.

When a defendant's competency is in question and they are suspected of having a developmental disability, the evaluation of their mental condition must be performed by a developmental disabilities professional. RCW 10.77.060(1)(c).

Here, Mr. Picker complains that a developmental disabilities professional did not perform his second or third competency evaluations and that his developmental disabilities were considered during restoration treatment. Mr. Picker claims that, had he been properly evaluated, he would have been eligible for programs that offer an integrated approach yielding faster results through more humane means.

As discussed above, the court notified the Department in its first order for a competency evaluation that Mr. Picker may have developmental disabilities. The Department adhered to the order and enlisted Dr. Strandquist, a developmental disabilities professional, to participate in the evaluation of Mr. Picker and provide consultation to Dr. Morrison. After completing the evaluation, Dr. Strandquist and Dr. Morrison both agreed Mr. Picker did not have developmental disabilities:

> [Mr. Picker] performed well on the verbal and nonverbal subtests, producing a valid result for both. . . . The test results also provided *very strong support for the conclusion that he is not developmentally disabled*. . . . His performance on the test indicated his verbal and nonverbal reasoning ability in the low average to average range or higher.

CP at 47 (emphasis added). They further agreed there was no "basis for concluding that [Mr. Picker] has a developmental disorder." CP at 47.

16

Mr. Picker never challenged Dr. Strandquist's findings, nor does he provide any evidence that a subsequent developmental disabilities evaluation was warranted. Rather, Mr. Picker seems to have self-diagnosed developmental disabilities and speculates about treatment options. This falls short of demonstrating the proceedings suffered from a fundamental defect that inherently resulted in a complete miscarriage of justice.

Mr. Picker's claim of being denied statutory protections afforded to those with developmental disabilities is unsupported by the record.

AFFIDAVIT OF PROBABLE CAUSE

Mr. Picker argues the affidavit of probable cause is tainted and fails to establish probable cause. Consequently, he argues his arrest was unconstitutional and suppression of evidence is warranted. We decline review of the issue.

In reliance on Ms. Picker's declaration, Mr. Picker argues the probable cause affidavit is tainted because Deputy Conley initially misidentified a witness. Ms. Picker claims the police report contained various inaccuracies and attributed statements to her that she did not make. In conflict with these assertions is Deputy Conley's supplemental affidavit that clarified Mr. Picker's other sister, Ms. Kugler, lied about her identity and claimed to be Ms. Picker.

In support of his proposed remedy for the tainted probable cause affidavit, Mr. Picker directs us to the standard applied to errors contained in a warrant. Mr. Picker argues:

17

> [A] defendant who makes a substantial preliminary showing that a warrant contains misstatements or omissions of material facts necessary to the determination of probable cause—made either intentionally or with reckless disregard—is entitled to a hearing to test the veracity of the underlying affidavit.

Motion for Relief at 21. Fatal to Mr. Picker's argument is that he was not arrested on a warrant; he was arrested on the deputy's determination of probable cause.

Under RAP 10.3(a)(6), the content of a brief must include "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." Moreover, passing treatment of an issue or lack of reasoned argument is insufficient to merit this court's consideration. *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012). "A party waives an assignment of error not adequately argued in its brief." *Milligan v. Thompson*, 110 Wn. App. 628, 635, 42 P.3d 418 (2002). We will not consider claims insufficiently argued. *State v. Elliott*, 114 Wn.2d 6, 15, 785 P.2d 440 (1990).

Here, Mr. Picker does not present a sufficient argument nor cite proper authority to support his contention. We therefore decline review of this issue.

Lastly, Mr. Picker asserts a *Brady*[3] violation for the first time in reply to the State's brief. RAP 10.3(c) limits the reply brief "to the issues in the brief to which the

---

[3] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

18

reply brief is directed." We may decline to review issues raised for the first time in a reply brief. *City of Spokane v. White*, 102 Wn. App. 955, 963, 10 P.3d 1095 (2000).

Because Mr. Picker belatedly asserted a *Brady* violation for the first time in his reply brief, we decline review of this issue.

## CONCLUSION

We deem Mr. Picker's PRP timely and deny the petition on the merits.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:


_____
Lawrence-Berrey, C.J.


_____
Staab, J.